UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LESLYE KNOX, Individually, and as Natural Guardian
of Plaintiffs Jordan Terrell Ellis, Reuven Carter,
Shanon Carter, Shayrah Carter, Yoshavyah Carter and       : Civil Action No. 07-3349
Amitai Carter, JORDAN TERRELL ELLIS, minor,
REUVEN CARTER, minor, SHANON CARTER, minor,
SHAYRAH CARTER, minor, YOSHAVYAH CARTER,                  : **AFFIRMATION OF**
minor, AMITAI CARTER, minor, by their Next Friend and     : **SCOTT R. EMERY IN SUPPORT**
Guardian Leslye Knox, and TSAPHRIRAH ELLIS,               : **OF PALESTINE MONETARY**
                                                          : **AUTHORITY'S MOTION FOR**
                Plaintiffs-Judgment Creditors,            : **LEAVE TO INTERVENE AND**
                                                          : **FOR AN ORDER VACATING**
        - against -                                       : **THE WRIT OF EXECUTION**
                                                          : **AND DISMISSING THE**
THE BANK OF NEW YORK,                                     : **COMPLAINT**

                Defendant-Garnishee,

PALESTINE MONETARY AUTHORITY,

                Applicant for Intervention.
------------------------------------------------------------------X

SCOTT R. EMERY, an attorney admitted to the Bar of this Court, affirms the following:

1.   I am a member of Lynch Daskal Emery LLP, attorneys for Plaintiff Palestine Monetary Authority ("PMA"). I respectfully submit this affirmation in support of PMA's Motion for Leave to Intervene, pursuant to Rules 6(d) and 24(a)(2) of the Federal Rules of Civil Procedure, allowing PMA to intervene to obtain confirmation from this Court that the Writ of Execution dated February 14, 2007 has no bearing on any PMA clearance funds suspended by the Bank of New York ("Seized Funds"), which the New York Supreme Court ordered released on April 2, 2007. PMA further moves, pursuant to F.R.C.P. 12(b)(1) and (6), to dismiss the Complaint for the reasons discussed below and for an order immediately vacating the Writ of Execution served on the Bank of New York ("BNY") that, according to plaintiffs' April 25, 2007 complaint commencing turnover proceedings, purports to attach the Seized Funds.

was established pursuant to the issuance of Law No. 2 of 1997 in the Palestinian Territories in accordance with the terms of the Oslo Accords. (The Oslo Accords refers to a series of agreements reached between Israel and the Palestine Liberation Organization between 1993 and 1998.) PMA serves as the regulatory authority for commercial banks and related deposit-taking institutions in the Palestinian Territories. *See* Ex. A below at ¶ 13-22. It is not controlled by the PA or PLO and possesses an autonomous corporate character financially and operationally independent from those entities. It does not hold or manage any funds belonging to either organization or of any other named defendant in the *Ungar* Action. Furthermore, PMA has enjoyed and continues to enjoy good banking relations with banks in Israel, Europe, and throughout the world. PMA is also in good standing with the United States Treasury and the Federal Reserve Bank.

3.   PMA's core function is to perform clearance transactions, here, in U.S. dollars on behalf of the banks it regulates. (PMA also performs clearance transactions in Euros, Jordanian dinars, and Israeli shekels.) Prior to the seizure of the funds at issue, PMA conducted these clearance transactions through the Palestine International Bank ("PIB"), which operates as a commercial bank in the Palestinian Territories. PIB, in turn, processed the transactions through its account with BNY. PMA does not maintain an account with BNY (*see* Ex. F below at 20) and, in fact, holds no assets in the U.S.

4.   Through March 31, 2007, PMA has suffered in excess of $2.2 million in lost interest and/or interest obligations on the Seized Funds. It continues to incur such damages at a rate in excess of $3,200 per day while the Seized Funds continue to be restrained (figure varies according to interest rate changes). While funds are frozen by BNY, PMA cannot fulfill its obligations to the banks it serves and is limited in its ability to generate income. Moreover,

2

that have been frozen by BNY. If BNY's improper restraint of the funds continues, PMA's relationship with the commercial banks it serves will continue to be damaged and PMA will continue to suffer substantial monetary damages as well as the loss of its goodwill and reputation as a trusted member of the international banking community.

5. Attached as Exhibit A is a copy of the First Amended Complaint filed July 19, 2005 in *Palestine Monetary Auth. v. Strachman*, Index No. 107777/05, Supreme Court of the State of New York, County of New York ("*Ungar* Action").

6. Attached as Exhibit B is a copy of a judgment entered by the U.S. District Court for the District of Rhode Island in the matter of *Estates of Yaron Ungar et al. v. The Palestinian Authority, et al.*, C.A. No. 00105(L) (Hon. Ronald R. Laguex) ("RI Action").

7. Attached as Exhibit C is a copy of an injunction dated May 5, 2005 issued in the RI Action.

8. Attached as Exhibit D is a copy of a "Notice of Injunction" dated May 9, 2005.

9. In 2005, on the basis of the RI Injunction, the Notice of Injunction, and the State Restraining Notice, BNY suspended approximately $30,000,000 in wire transfers.[1] *See* Ex. A at ¶ 44.

10. Attached as Exhibit E is a copy of a Decision and Order dated April 2, 2007 issued in the *Ungar* Action with Notice of Entry.

---

[1] The precise amount of the dollar transactions initially affected by the Strachman Parties' actions is $39,634,693. Two transactions were cancelled due to insufficient funds, however, and one further transaction was cancelled before BNY debited the PIB's account. The dollar value of the funds actually placed in the suspense account is $17,604,703.33. This amount does not include two Euro transactions of 39,994.26 Euro and 15,000.01 Euro.

Attached as Exhibit F is a copy of a Decision and Order dated October 15, 2005 issued in the *Ungar* Action.

12. Attached as Exhibit G are copies of excerpts of the testimony of Jessica Goodwin from a hearing in the *Ungar* Action that took place on August 3, 2005.

13. Attached as Exhibit H is a copy of PMA's motion for summary judgment, without exhibits, in the *Ungar* Action.

14. Attached as Exhibit I is a copy of a Stipulation of Discontinuance filed November 9, 2005 in the *Ungar* Action.

15. Attached as Exhibit J is a copy of an email from Robert J. Tolchin to Haig V. Kalbian dated April 8, 2007.

16. Attached as Exhibit K is a copy of a Writ of Execution issued February 14, 2007 in the *Knox* Action. PMA had been unaware about the Writ of Execution before April 8, 2007.

17. Attached as Exhibit L is a copy of an email from Haig V. Kalbian to Robert J. Tolchin dated April 10, 2007.

18. Attached as Exhibit M is a copy of a letter from Scott R. Emery to Kenneth M. Bialo dated April 12, 2007. On April 11, 2007, Mr. Bialo advised PMA counsel that unless the Writ of Execution at Exhibit K is withdrawn or BNY is otherwise ordered, BNY will continue to restrain the Seized Funds.

19. Attached as Exhibit N is a copy of an email from Robert J. Tolchin to Haig V. Kalbian dated April 18, 2007.

20. Attached as Exhibit O is a copy of an Order to Show Cause issued on April 18, 2007 in the *Ungar* Action.

Attached as Exhibit P is a copy of the transcript of the hearing on the Order to Show Cause referenced in Exhibit O.

22. Attached as Exhibit Q is a copy of a letter from Scott R. Emery to Kenneth M. Bialo dated April 20, 2007.

23. Attached as Exhibit R is a copy of the Complaint seeking to commence turnover proceedings dated April 25, 2007.

24. Attached as Exhibit S is a copy of OFAC Recent Action Notice dated April 12, 2006.

25. Attached as Exhibit T is a copy of OFAC General License No. 4 (April 12, 2006).

26. For the foregoing reasons and the reasons set forth in the accompanying Affirmation of Scott R. Emery in Support of the Palestine Monetary Authority's Motion for Leave to Intervene and for an Order Vacating the Writ of Execution and Dismissing the Complaint, the Palestine Monetary Authority respectfully requests that this Court enter an order vacating the Writ of Execution, dismissing the complaint, and directing immediate release of the Seized Funds, and for such further relief as the Court deems appropriate.

Dated: New York, New York
      May 7, 2007

_____
SCOTT R. EMERY