Premila K. Reddy, Esq.
LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
(212) 302-2400

Attorneys for Plaintiff Palestine Monetary Authority

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ X
PALESTINE MONETARY AUTHORITY,          :
                                               :    Index No. 107777/05
                 Plaintiff,        :

                                               :
         -against-               :    **NOTICE OF ENTRY**
DAVID STRACHMAN, as Administrator for the  :
Estate of YARON UNGAR, PROFESSOR      :
MEYER UNGAR, JUDITH UNGAR, RABBI URI  :
DASBERG, JUDITH DASBERG, Individually and :
in their capacity as legal guardians of YISHAI  :
UNGAR & DVIR UNGAR, AMICHAI UNGAR,  :
DAFNA UNGAR & MICHAEL COHEN, & THE  :
BANK OF NEW YORK,                 :
                                         :
                       Defendants.    :
------------------------------------------------------------------ X

        **PLEASE TAKE NOTICE** that the within is a true copy of the Order of

the Honorable Shirley Werner Kornreich, dated April 2, 2007 and entered in the New

York County Clerk's Office on April 10, 2007.

Dated:   New York, New York
         April 10, 2007

                        LYNCH DASKAL EMERY LLP
                        Attorneys for Plaintiff Palestine Monetary Authority

                        By: *[signature]*
                           Premila K. Reddy, Esq.
                        264 West 40th Street
                        New York, New York  10018
                        (212) 302-2400

To:    All Counsel (see attached service list)

## PALESTINE MONETARY AUTHORITY RIDER

Robert Tolchin, Esq.
JAROSLAWICZ AND JAROS, ESQS.
150 William Street, 19th Floor
New York, New York  10038

Kenneth M. Bialo, Esq.
Emmet, Marvin & Martin, LLP
120 Broadway, 32nd Floor
New York, NY  10271

LYNCH DASKAL EMERY LLP
264 West 40th Street
New York, New York 10018
(212) 302-2400

Attorneys for Plaintiff-Counterclaim Defendant Palestine Monetary Authority

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
PALESTINE MONETARY AUTHORITY,                          :
                                                       : Index No.: 107777/05
                    Plaintiff-Counterclaim Defendants, : Judge Shirley W. Kornreich
                                                       :
          v.                                           :
                                                       : **AFFIDAVIT OF SERVICE**
DAVID STRACHMAN, as administrator of the               :
ESTATE OF YARON UNGAR, *et al.*                        :
                                                       :
                    Defendants-Counterclaim Plaintiffs.:
-------------------------------------------------------------------------X
DAVID STRACHMAN, as administrator of the               :
ESTATE OF YARON UNGAR, *et al.*,                       :
                                                       :
                    Plaintiff-Judgment Creditors,      :
                                                       :
          -against-                                    :
                                                       :
THE PALESTINIAN AUTHORITY, *et al.*                    :
                                                       :
                    Defendants-Counterclaim Plaintiffs.:
-------------------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

          TARIQ GOODWINE, being duly sworn, deposes and says:

          1.        I am not a party to this action, am over 18 years of age, and I reside at 2255
Cruger Avenue, Bronx, NY 10467.

          2.        On the 10th day of April, 2007, I served a copy the within **NOTICE OF ENTRY**
by personally delivering a true and correct copy of the same to:

Robert Tolchin, Esq.
JAROSLAWICZ AND JAROS, ESQS.
150 William Street, 19th Floor
New York, New York  10038

Kenneth M. Bialo, Esq.
EMMET, MARVIN & MARTIN, LLP
120 Broadway, 32nd Floor
New York, NY  10271

TARIQ GOODWINE

Sworn to before me this
10th day of April, 2007

Notary Public

PREMILA K. REDDY
Notary Public, State of New York
No. 02RE6152115
Qualified in New York County
Commission Expires August 28, 20 10

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:                                                    PART 54

Index Number : 107777/2005

PALESTINE MONETARY AUTHORITY

vs                                          INDEX NO.

DAVID, STRACHMAN                            MOTION DATE 4/30/06

Sequence Number : 007                       MOTION SEQ. NO. 7

SUMMARY JUDGMENT                            MOTION CAL. NO.

The following papers, numbered 1 to _____ were read on this motion to/for _Summary_

_Judgment in favor of P._
                                                              PAPERS NUMBERED
Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...        1, 2

Answering Affidavits — Exhibits _____                     3

Replying Affidavits _____                           4

Cross-Motion:  ☐ Yes   ☒ No

Upon the foregoing papers, it is ordered that this motion

**FILED**

APR 10 2007

COUNTY CLERKS OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 4/2/07                    SHIRLEY WERNER KORNREICH
                                                    J.S.C.

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PALESTINE MONETARY AUTHORITY,

Plaintiffs,

- against -

DAVID STRACHMAN, as administrator of the Estate
of YARON UNGAR, PROFESSOR MEYER UNGAR,
JUDITH UNGAR, RABBI URI DASBERG, JUDITH
DASBERG, individually and in their capacity as legal
guardians of YISHAI UNGAR & DVIR UNGAR,
AMICHAI UNGAR, DAFNA UNGAR & MICHAEL
COHEN, & THE BANK OF NEW YORK,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE ESTATE OF YARON UNGAR, by and through the
administrator of his Estate, DAVID STRACHMAN,
PROFESSOR MEYER UNGAR, JUDITH UNGAR,
RABBI URI DASBERG, JUDITH DASBERG, indivi-
dually and in their capacity as legal guardians of YISHAI
UNGAR & DVIR UNGAR, AMICHAI UNGAR, DAFNA
UNGAR & MICHAEL COHEN,

Plaintiffs,

- against -

THE PALESTINIAN AUTHORITY, a/k/a, THE PALESTIN-
IAN INTERIM SELF-GOVERNMENT AUTHORITY, THE
PALESTINE LIBERATION ORGANIZATION, YASSER
ARAFAT, JIBRIL RAJOUB, MUHAMMED DAHLAN,
AMIN AL-HINDI, TAWFIK TIRAWI, RAZI JABALI,
HAMAS-ISLAMIC RESISTANCE MOVEMENT, a/k/a,
HARAKAT AL-MUQAWAMA AL-ISLAMIYYA, AB-
DEL-RAHMAN ISMAIL ABDEL-RAHMAN GHANIMAT,
JAMAL ABDEL FATAH TZABICH AL HOR, RAED
FAKHRI ABU HAMDIYA, IBRAHIM GHANIMAT, &
IMAN MAHMUD HASSAN FUAD KAFISHE,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECISION & ORDER**
**INDEX No.: 107777/05**

INDEX No.: 105521/05

007

KORNREICH, J.:

The instant matter involves a judgment for $116,000,000 rendered by the United States District Court, District of Rhode Island, in *The Estate of Yaron Ungar et al. v. The Palestinian Authority et al.*, C.A. No. 00105L (Hon. Ronald R. Lagueux), against, *inter alia*, The Palestinian Authority (the "PA"), The Palestine Liberation Organization ("PLO") and Hamas-Islamic Resistence Movement ("Hamas").[1] The Strachman parties domesticated the judgment in New York County under Index Number 105521/05. Although the Palestinian Monetary Authority ("PMA"), the central bank of the PA, was not a named party in the Rhode Island action and no judgment was rendered against it, the Strachman parties served a restraining notice and information subpoena upon the Bank of New York ("BONY"), naming the PMA, among others entities. Additionally, the Rhode Island Federal Court issued an injunction restraining the alienation of assets of, *inter alia*, the PA and "their officers, agents, servants, employees, attorneys, partners, fiduciaries, and any natural or legal person in privity with them and/or acting in active concert and participation with them" located within the jurisdiction of the United States ("Federal Order"). Counsel for the Strachman parties annexed a Notice to the Federal Order, naming, *inter alia*, the PMA. As a result of both the State Restraining Notice and the Federal Order, approximately $30,000,000 of wire transfers relating to the PMA were placed in a suspense account by BONY.

The PMA, then, commenced an action under Index No. 107777/05 for the following: a declaration that the money was improperly restrained, that the PMA is not an alter-ego or agent

---

[1] Plaintiffs (the "Strachman parties") are the representatives and heirs of Yaron Ungar, who brought suit under the Antiterrorism Act of 1991, for the murder of Mr. Ungar, a United States citizen.

of the PA or PLO and that the restraints, therefore, should be lifted; tortious interference with business relations as against BONY and the Strachman defendants; and conversion by BONY. They also moved, by Order to Show Cause, for a preliminary injunction to release the funds.

The Strachman defendants answered the complaint contending, *inter alia*, that the PMA is controlled by the PA and/or the PLO, is not independent of those bodies, holds PA or PLO funds and is "legally indistinguishable" from the PA and/or the PLO. The Strachman defendants further counterclaimed, seeking a declaration that the PMA is legally indistinguishable from the PA and liable for the judgment, or alternatively, the PMA holds $500,000,000 in PA assets and, therefore, PMA or PA money should be turned over to satisfy the judgment. The Strachman parties also cross-claimed against BONY for turnover of all funds owed to or belonging to "the PA's Aliases and Shell Funds, including without limitation the PMA, the Palestine Investment Bank ("PIB"), the Palestinian Economic Council for Development and Reconstruction ("PECDAR"), the Palestine Investment Fund ("PIF") and the Palestine National Fund ("PIF")."

I.    *Court's October 2005 Decision After Hearing* [2]

The court, after a hearing, redacted the PMA from the State Restraining Notice, finding that the State Restraining Notice violated Article 4A of the UCC. However, the Federal Order remained in effect. Consequently, the court granted PMA's application for a preliminary injunction, setting a bond and ordering discovery on issues surrounding the Federal Order and the Strachman parties' counterclaims and crossclaims—whether the PMA was a separate juridical entity, whether any portion of the suspended PMA money belonged to the PA or PLO and the issues touching upon other entities with money held by BONY. The PMA had discontinued its

---

[2]The court assumes familiarity with its October 2005 decision.

3

action against BONY and, subsequently, discontinued its action against the Strachman defendants.

As explained in the court's October 2005 hearing decision, the PMA was created by the Palestinian Monetary Authority Law ("PMAL"), pursuant to authority granted it by the Oslo Accords. Under that PMAL enabling statute, the PMA was created to secure the soundness of the banking system, maintain monetary stability and encourage economic growth in the Palestinian Territories. The PMA, pursuant to the PMAL, has "an autonomous corporate character and full legal capacity to exercise all the works and actions which guarantee realization of the objectives for which it has been instituted, including possession of the real estates and movables required for the progress of its works and exercise of its activities, and disposal thereof...." In addition, pursuant to Article 11 of the PMAL, the PMA may use its general reserve funds only to reduce losses sustained by the PMA. Finally, pursuant to Article 11, the annual net profit of the PMA is paid to the treasury of the PA after payment of PMA commitments, expenses and transfers to its reserve account. The decision as to transferring annual profits to the reserve fund is discretionary and lies with the PMA board. In granting the preliminary injunction, the court found that the hearing evidence established that the PMA: is run as a distinct economic enterprise, responsible for its own finances; has an autonomous budget, workforce and operations; owns land; can sue and be sued; and maintains offices in a location independent from the government. The governor, deputy governor and the board of the PMA are appointed by the PA president, but the policies of the PMA and the government do not always correspond.

The October 2005 decision was not appealed.

4

II.    *Instant Motions*

    A.    *PMA Summary Judgment Motion*

Three motions are now before the court. First, PMA moves for summary judgment on its action, as well as the Strachman parties' crossclaims and counterclaims, arguing that: 1) UCC 4A prohibits this court from ordering turnover of any PA funds held by the PMA, an intermediary bank; 2) UCC 4A prohibits turnover of PMA funds held by BONY; 3) this court lacks jurisdiction to render an advisory opinion in this matter, the relief the Strachman parties ultimately seek once the restrained BONY money is no longer in issue; and 4) the Strachman parties' claims turn on a political question making the action non-justiciable. PMA also seeks discharge of the undertaking set by the court when the preliminary injunction was granted.

In regard to the political question doctrine, PMA contends that, as a result of a recent Executive Order issued by the U.S. Department of the Treasury through its Office of Foreign Assets Control ("OFAC"), the PMA was declared to be independent from the PA. The submissions of the PMA demonstrate that on April 12, 2006, OFAC determined that Hamas, a terrorist entity whose property is blocked pursuant to three OFAC-administered economic sanction programs, has property interests in the transactions of the PA. OFAC then issued an order prohibiting United States persons from engaging in transactions with the PA unless authorized. Limited transactions, however, were authorized by license, as were transactions between United States persons and non-governmental individuals, corporations or organizations, including private banks, within the Palestinian Territories. OFAC issued six general licenses authorizing transactions with certain PA entities. General License Number 4 permitted "[t]ransactions with entities under the control of the Palestinian President and certain other

5

entities." Four entities and their affiliates were listed: 1) the PA President; 2) the Palestinian Judiciary; 3) certain members of the Palestinian Legislative Council who were not elected on the Hamas slate; and 4) "the following independent agencies; the Central Elections Commission, the Independent Citizens Rights Commission, the General Audit Authority/External Audit Agency, and the Palestinian Monetary Authority." PMA argues that the seminal question in this case – whether the PMA is a separate juridical entity whose assets are distinct from those of the PA– is not justiciable due to the OFAC license declaring the PMA to be an "independent agency."

The Strachman parties oppose summary judgment. They argue that the Treasury Department Order cited by PMA does not foreclose this court from determining the case since the Executive Branch has neither served an *amicus* brief nor a statement of interest in this matter. The Strachman parties also point to *First Nat'l. City Bk. v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983) *("Bancec")* and the line of cases which follow it, as precedent that the issue before the court is justiciable. Finally, on this issue, the Strachman parties argue that the Department of State, not the Treasury Department, determines United States foreign policy and, in any event, the OFAC Order did not decide that the PMA is a separate juridical entity. The Strachman parties further oppose the other grounds for the motion, contending that this court's prior decisions determined that the UCC.4A issues raised could not be ultimately determined without discovery. In addition, they contend that they now seek turnover of a debt the PMA allegedly owes the PA and want to amend their complaint to allege fraudulent conveyance of a debt – PMA's 2005 annual profits. According to the Strachman parties, turnover may be had in New York for any debt the PMA owes to the PA, since the PMA has submitted to this court's jurisdiction. Finally, they contend the declaratory judgment requested

6

by them is not advisory but an issue ripe and necessary for this court's determination.

The PMA has replied, arguing that the OFAC Order is an Executive action, since OFAC's purpose is "to administer and enforce economic and trade sanctions based on US foreign policy and national security goals." It further points to court decisions recognizing that OFAC regulations involve foreign policy and seeks to distinguish this case from *Bancec*. Moreover, PMA refutes the Strachman parties' claim that this motion is but an attempt to relitigate the court's previous decisions. Rather, it argues that this is a summary judgment motion made after a year-and-one-half of discovery and that the Strachman parties, who received all of BONY's banking records regarding the suspended funds prior to the hearing, have sought no further discovery on the UCC banking issue and now offer no evidence to refute the claim that the restraint of the BONY funds violates UCC 4A. Lastly, PMA contends that the Strachman parties have conceded the court's inability to order turnover of PMA property located outside of New York State by arguing that they seek debt owed by the PA to the PMA, rather than property. The PMA refutes this argument by contending it owes no debt to the PA, that its 2005 annual profits do not constitute debt, that, at most, those profits are a contingent debt and that whatever jurisdiction the court now has over the PMA, by PMA's instituting the instant lawsuit, was obtained through the "unclean hands" of the Strachman parties.

B.    *Motion For Leave to Amend*

The Strachman parties move to amend their counterclaims to add causes of action for fraudulent conveyance and money had and received. The motion is based upon the PMA's decision to retain its 2005 excess profits. The Strachman parties characterize this action as a fraudulent transfer or taking of PA money. In opposition to this motion, PMA argues that the

7

proposed causes of action are without merit, because: the State Restraining Notice, served by mail upon counsel for the PMA, was not properly served pursuant to CPLR §5222; the PMA profits the Strachman parties seek to attach is a contingent debt not attachable under CPLR §5201; the PA has never had any property rights in the money sought; alternatively, any debt owed by the PMA to the PA was extinguished by the February 9, 2006 PMA decision to retain the money; and the court lacks jurisdiction over PMA assets located in the Palestinian territories or other international locations. Finally, the PMA argues that to add two new causes of action at this late date would prejudice the PMA by unduly delaying the action for further discovery.

In support of their opposition, PMA refers to the hearing testimony of Dr. George Abed, the Governor of the PMA, and submits the affidavit of Dr. Abed. Dr. Abed testified that the law gives the PMA "primary call" on the money earned by the Bank and requires the PMA to have sufficient capital reserves and to pay all of its own expenses. Thus, after satisfying all of its obligations, the PMA Board of Directors, without any government input, decides if the residual profits should be kept or transferred to the PA Treasury. In the April 14, 2006 affidavit submitted with PMA's opposition papers, Dr. Abed avers that the decision to retain the 2005 profits was "based upon a consideration of the PMA's financial position and whether it would be adversely affected as a result of such transfer." Abed aff., para. 7. Dr. Abed further avers that the PMA Board, on February 7, 2006, reviewed the PMA's financial position and decided to allocate its 2005 net profits to the general reserve account. Id. at para. 8. He states that the Board's determination was based upon a study of the adequacy of the PMA's reserves and capital, prepared by the International Monetary Fund ("IMF") at Dr. Abed's request, and a survey by the Bank for International Settlement. The September 16, 2005 study "strongly underscored

8

the importance of the PMA's continued efforts to strengthen its capital and reserves." *Id.* at

para.10. The decision was approved by President Mahmoud Abbas. *Id.* at para. 9.[3]

### C.    Protective Order

PMA also moves for a protective order, precluding discovery pending the outcome of its

summary judgment motion.  The Strachman parties cross-move to compel the PMA to respond to

its discovery demands.  The motions are consolidated herein for unitary disposition.

### III.    Conclusions of Law

#### A.    PMA Motion for Summary Judgment

The court will speak to PMA's arguments in reverse order.

##### 1.    Political Question

Ever mindful of separation of powers, courts, when faced with a case implicating foreign

relations, must be concerned with the judiciary's proper role.  The political question doctrine

prohibits the court from exceeding its constitutional authority and requires the court to determine

justiciability on a case-by-case basis. *Baker v. Carr*, 369 U.S. 186, 217 (1962). *Accord Alperin*

*v. Vatican Bk.*, 410 F.3d 532, 545 (9th Cir. 2005), *cert. denied* 126 S.Ct.1141 (2006)("most cases

involving foreign affairs fail to fall neatly into categories on one side or the other of the

justiciable/nonjusticiable line."); *In re MTBE Products Liab. Litig.*, 438 F.Supp.2d 291, 295

(S.D.N.Y. 2006)(to extent question is beyond competence and proper institutional role of courts,

non-justiciable political question is posed). "Informing this inquiry are considerations of 'the

history of [the question's] management by the political branches,' its 'susceptibility to judicial

---

[3] Dr. Abed's affirmation states that a copy of the Board's minutes and the confirmation of President Abbas were attached. However, those documents were not attached to the papers submitted to the court.

handling' and 'the possible consequences of judicial action.' " *Alperin, id.* citing *Baker, id.* at 211–12.

A six-point test, as set forth in *Baker, id.*, is applied when deciding the political question doctrine. *Alperin, supra* at 544. *Accord Whiteman v. Dorotheum Gmbh & Co. KG*, 431 F.3d 57, 70 (2d Cir. 2005); *Ungar v. The PLO*, 402 F.3d 274, 280 (1st Cir. 2005); *Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995), *rehearing denied* 74 D.3d 377, *cert. denied* 518 U.S. 1005 (1996). Each prong stands on its own, and each may preclude justiciability. *Id.* The elements are whether: 1) there exists a textually demonstrable constitutional commitment of the issue to a coordinate political department; 2) there are judicially discoverable and manageable standards for resolving the issue; 3) a non-judicial discretionary policy determination must be made in order to resolve the issue; 4) the court's undertaking independent resolution of the issue would express a lack of respect due to a coordinate branch of government; 5) there is an unusual need for unquestioning adherence to a political decision already made; and 6) there exists the potential for embarrassment were the court to rule differently from another political department on the issue. *Baker, supra* at 217. *Accord In re MTBE, supra* at 296; *Whiteman, id.*; *Alperin, id.*; *Ungar, id.*; *Kadic, id.*

Applying the *Baker* criteria here, the court finds the case non-justiciable. As the Strachman parties point out, *Bancec* set forth judicially discoverable and manageable criteria for deciding if the PMA is a separate non-juridical entity from the PA and made clear that the issue does not involve a non-judicial discretionary policy determination, the second and third *Baker* elements. Nonetheless, the court must look at the particular facts of this case in sorting through these and the remaining *Baker* criteria. *See Alperin, id.*; *Kadic, id.* (*Baker* factors are relevant to

determine if judicial resolution of question would contradict prior decision taken by political

branch, thereby seriously interfering with important governmental interests).

Foreign policy determinations have long been the domain of the political branches of

government. *Baker, supra.*(Constitution commits foreign relations to Executive and Legislative

branches); *Whiteman, supra* at 71 (historic deference due Executive in conduct of foreign

affairs). Here, OFAC, an agency within the Department of Treasury responsible for coordinating

international sanctions imposed by the political branches of government (*Sacks v. OFAC*, 466

F.3d 764, 769 [9th Cir. 2006]) has set forth an official policy statement proclaiming the PMA to

be an agency independent of the P.A.[4]   The sanctions' regulations administered by OFAC

encompass, in OFAC's words, a "foreign affairs function." 71 Fed. Reg. 27199 (May 10, 2006).

Hamas is a target of each of the sanction programs, and, as a result, United States

persons, under these programs, may not deal in property or interests in property of Hamas. *Id.*

Since OFAC has determined that Hamas has an interest in the PA, United States persons are

subject to the same prohibitions regarding the PA as they are regarding Hamas. *Id.* However, on

April 12, 2006, OFAC authorized transactions with the PMA, as well as several other agencies in

the Palestinian territories it deemed to be "independent" from the PA -- The Central Elections

Commission, The Independent Citizens Rights' Commission and the General Audit

Authority/External Audit Agency. *Id.*[5]   The independence or separateness of the PMA from the

---

[4] According to the Federal Register, OFAC administers three terrorism sanctions
programs (31 CFR parts 595, 594, 597) which implemented Executive Orders. 71 Fed. Reg.
27199 (May 10, 2006).

[5] The Central Elections Commission is an independent body in charge of administering,
conducting and supervision elections in Palestine. Website of CEC. The Independent Citizens'
Rights Commission is a human rights commission created in 1993, mandated to ensure respect

PA is the issue this court must determine in this case.  The court's undertaking an independent

resolution of an issue identical to that already decided by OFAC, the court believes, would

express a lack of respect due the Executive branch and its orders.  *See BONY v. Norilsk Nickel*,

14 A.D.3d 140, 146-7 (1st Dept. 2004), *app. dismissed* 4 N.Y.3d 846 (2005)(OFAC is not

limited by concepts of title under state law in promulgating its regulations and defining interests

in property and its definition is subject to deferential judicial review).  More important, it would

insert the judicial system into foreign policy regarding worldwide terrorism and Middle-East

relations.  And, if the court were to make a determination different from the policy statement of

OFAC and the political decision of the Executive branch – – that is, were the court to find PMA

an alter ego or part of the PA[6] – there exists potential for embarrassment.  The court, therefore,

finds the issue of the separate juridical status of the PMA non-justiciable.

    2.    *UCC Article 4a*

      However, the court notes that even were it to find the issue justiciable, the funds would

still have to be released.  Under Federal Rule of Civil Procedure 69(a), Federal money judgments

are enforced through writs of execution and a prevailing party in the Federal action must use state

law procedures to enforce the judgment.  *Cordius Trust v. Kummerfeld*, 153 Fed. Appx. 761, 762,

2005 U.S. App. LEXIS 21719 (2d Cir.); *Karaha Bodas Co. LLC v. Perusahaan Pertambangan*

*Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002); *Alliance Bond Fund, Inc. v.*

---

for citizens' rights in Palestine by upholding respect for the rule of law by all official bodies.
Website of PICCR.

   [6] In its October 14, 2005 decision, the court found that, based upon the hearing evidence
and *Bancec* criteria, PMA was a separate juridical entity from the PA.  The preliminary
injunction was granted as a result.

*Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 20 (2d Cir. 1999); *Arnold v. Blast Intermediate Unit 17*, 843 F.2d 122, 123-4 (3d Cir. 1988); *Rodd v. Region Constr. Co.*, 783 F.2d 89, 91 (7th Cir. 1986); *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 852 (7th Cir. 1981); *Gabovitch v. Lundy*, 584 F.2d 559, 561 (1st Cir. 1978). Consequently, the Strachman parties are bound by New York law in the instant action.

UCC 4A, New York's banking law, specifically addresses wire transfers and permits a court to restrain a sender from issuing a payment order, an originator's bank from executing on an originator's order or a beneficiary's bank from releasing funds from a payment order. UCC §4-A-503; UCC §§4-A-502. A court, however, is prohibited from restraining a funds transfer at any other point. *Id.* at UCC §4-A-503. *See BONY v. Norilsk Nickel, supra* at 145; *Weston Compagnie de Fin. Et D'Investissement, S.A. v. La Republica Del Ecuador*, 1993 WL 267282, 1993 US Dist LEXIS 9531 (S.D.N.Y.). As explained in the *Official Comment* to §4-A-502(4), a creditor is limited in the funds he can reach. In fact, UCC §4-A-503 expressly prohibits levy on funds in an intermediary bank "to prevent interruption of a funds transfer after it has been set in motion." *Official Comment*, §4-A-503. *See Eur. Am. Bk. v. Bk. of N. S.*, 12 A.D.3d 189, 189-90 (1st Dept. 2004)(levy cannot be enforced upon receiving bank).

In the instant case, the facts show that the restraint was issued to BONY, an intermediary bank. BONY was neither the originator's bank nor the beneficiary's bank. Indeed, PMA had no account at BONY. When the funds were restrained, title to the funds had passed from PMA, and they were not subject to restraint. *See UCC §§4-A-209(1), 4-A-503; Eur. Amer. Bk. v. The Bk. of N. S., id.; Bass v. Bass*, 140 A.D.2d 251 (1st Dept. 1988); *Karaha Bodas, supra*(when seeking to enforce judgment in New York, judgment creditor cannot reach assets in which judgment debtor

13

has no interest); *U.S. v. BCCI Holdings*, 980 F.Supp. 515, 521 (D.D.C. 1997); *Weston Compagnie de Fin. Et D'Investissement S.A. v. La Republica Del Ecuador, supra*.  Thus, PMA is correct in arguing that  UCC 4A prohibits this Court from restraining PMA funds held by BONY.[7]

3.     *Execution on Alleged PA Funds Held by PMA in Territories*

Nor may the court attach PA funds allegedly held by the PMA in the Palestinian territories, since those funds are not within this court's jurisdiction.  *See McCloskey v. Chase Manhattan Bk.*, 11 N.Y.2d 936 (1962); *Nat'l. Union Fire Ins. Co. of Pittsburgh, Pa. v. Advanced Employment Concepts,  Inc.*, 269 A.D.2d 101 (1st Dept. 2000); *Gordon v. Gordon*, 110 A.D.2d 623, 625 (2d Dept. 1985); *Koehler v. Bk of Berm. Ltd.*, 2004 U.S. Dist. LEXIS 12892, 12 (S.D.N.Y. 2004); *Lok Prakashan Ltd. v. India Abroad Publ'ns., Inc.*, 2002 WL 1585820, 2, 2003 US Dist LEXIS 4793 (S.D.N.Y.), *aff'd.* 94 Fed. Appx. 856 (2d Cir. 2004).  The fact that the court has obtained personal jurisdiction over PMA through PMA's commencement of the instant lawsuit does not change this result.  Federal Rule of Civil Procedure 69(a) authorizes enforcement of a money judgment through writ of execution.  *See Motorola Credit Corp. & Nokia Corp. v. Uzan*, 288 F. Supp.2d 558, 562 (S.D.N.Y. 2003)(money judgments are enforced by means of writs of execution rather than resort to court's contempt power).  "[T]here is no statutory authority under New York law to require... a financial intermediary, to transfer property from outside [New York's] jurisdiction" *(Koehler, supra* at 36), for the purpose of such execution.

---

[7]      The Strachman parties have had a year-and-a-half to obtain discovery on this issue. BONY's documents which included the wire-transfers and the banking records, were already were turned over.  No further discovery has been sought by the Strachman parties, and no evidence has been submitted refuting PMA's allegations and the facts proved at the hearing.

14

4.    *2005 Profits of PMA*

As noted in this court's October 2005 decision, CPLR §5222 (b) provides that a restraining notice may be served upon a party other than the judgment debtor or obligor, only if that party "owes a debt to the judgment debtor or obligor or [the party] is in the possession or custody of property in which [the party] knows or has reason to believe the judgment debtor or obligor has an interest." A New York restraining notice, thus, cannot be utilized to reach assets in which the judgment debtor has no interest or a debt which is not a fixed obligation – that is, a debt which is not past due or certain to become due. *Bass, supra* at 253; *Supreme Mdse. Co., Inc. v. Chemical Bk.*, 70 N.Y.2d 344, 349-50 (1987). The 2005 PMA profits cannot be attached since they never vested in the PA, nor were they certain to become due.

Under Article 11 of the PMAL, the annual profit of the PMA is paid to the treasury of the PA only after payment of PMA commitments, expenses and transfers to its reserve account. Moreover, the decision as to transferring annual profits is discretionary and lies with the PMA board. Under this arrangement, the PA never had control of the 2005 PMA profits and there was no certainty that it would gain control of the money. It, therefore, was not property in which the PA had an interest or an attachable debt.[8] *See BONY v. Norilsk Nickel, supra* ("It is beyond cavil that attachment will only lie against the property of the debtor, and that the right to attach the property 'is only the same as the defendant's own interest in it' "); *Karaha Bodes Co., L.L.C., supra*, 313 F.3d 92 citing to *Gala Enters., Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212, 217

---

[8] *Black's Law Dictionary,* 5th ed. (1968), defines debt as: "A sum of money due by certain and express agreement. A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment."

15

(S.D.N.Y. 1997) ("Under New York law, a defendant has an interest in ...funds if any part of the money is within the present or future control of the defendant.").

### 5.    Cross-Claim Against BONY

Finally, PMA asks this court to dismiss the Strachman parties' cross-claim against BONY for turnover of all funds owed to or belonging to "the PA's Aliases and Shell Funds, including without limitation the PMA, the Palestine Investment Bank ("PIB"), the Palestinian Economic Council for Development and Reconstruction ("PECDAR"), the Palestine Investment Fund ("PIF") and the Palestine National Fund ("PIF")." Although this court will grant PMA's request in regard to any funds in which it nominally has an interest, the court denies the motion as it regards the other entities mentioned in the cross-claim. PMA does not have standing to move on behalf of those other entities.

### B.    Motion for Leave to Amend Answer

The Strachman parties move for leave to amend their answer to allege counterclaims for fraudulent conveyance and money had and received. The request is based upon PMA's failure to transfer its net 2005 annual profits to the PA's treasury.

"Although leave to amend pleadings is to be freely granted absent prejudice or surprise resulting from delay (CPLR 3025 [b]; see, Fahey v County of Ontario, 44 NY2d 934, 935), leave should be denied where the proposed claim is palpably insufficient (Tishman Constr. Corp. v City of New York, 280 AD2d 374, 377)." *Pasalic v. O'Sullivan*, 294 A.D.2d 103, 104 (1st Dept. 2002). The proposed amendment to the Strachman parties' answer, is denied as lacking in merit.

### 1.    Fraudulent Conveyance

16

Section 273-a of New York's Debtor and Creditor Law provides:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Here, no conveyance of property took place. As noted above, the PA had no property interest in or control of the 2005 annual profits of the PMA. The PMAL provided that the decision as to whether any of these profits would be transferred to the PA lies with the PMA board. Consequently, the profits always belonged to the PMA and were never conveyed in violation of New York's Debtor and Creditor Law. *Id.*

2.    *Money Had and Received*

Although an action for money had and received is one at law, it is recognized as an action in implied contract. *In re Estate of Witbeck*, 245 A.D.2d 848, 850 (3d Dept. 1997). The essential elements for this cause of action are that: 1) the defendant received money rightfully belonging to another; 2) the defendant benefitted from the receipt of the money; and 3) equity and good conscience dictate that the money should not be kept by defendant. *Id. See also Federal Ins. Co. v. Groveland State Bk.*, 37 N.Y.2d 252, 258, *rehearing denied* 37 n.Y.2d 924 (1975)(money had and received is founded upon equitable principles and plaintiff must show it is against good conscience for defendant to keep money); *Stephans v. Apostol*, 17 A.D.2d 982, 983 (2d Dept. 1962); *Gottfried v. Gottfried*, 269 A.D. 413, 418-9 (1st Dept.1945)(money had and received is obligation created by law in absence of agreement, when money placed in possession of one person under circumstances when in equity and good conscience, he ought not to retain it). The

17

elements are not made out here.

Again, the PA had no absolute right to the 2005 profits. Those profits, under the PMAl, were remitted to the PA only after all of the PMA expenses were paid, the PMA reserve fund and capital account were shored-up and a discretionary decision to transfer the profits made by the PMA board. Moreover, that the PMA's reserve fund benefitted from the profits does not offend good conscience and equity since the profits belonged to the PMA and were intended for its benefit.

C.    *Motion for a Protective Order and Cross-motion to Compel*

PMA moves for a protective order precluding further discovery. It argues that disclosure would undermine the political question doctrine. The Strachman parties cross-move to compel discovery. Given the court's rulings on PMA's motion for summary judgment and the Strachman parties' motion to amend, the motions are now moot. Accordingly, it is

ORDERED that the Palestinian Monetary Authority's motion seeking summary judgment on its complaint is granted; and it is further

ORDERED that the Palestinian Monetary Authority's motion seeking summary judgment as to defendants' counterclaims is granted, and the counterclaims are dismissed; and it is further

ORDERED that the Palestinian Monetary Authority's motion seeking summary judgment as to the Strachman parties' crossclaim against BONY for turnover of all funds owed to or belonging to "the PA's Aliases and Shell Funds, including without limitation the PMA, the Palestine Investment Bank ("PIB"), the Palestinian Economic Council for Development and Reconstruction ("PECDAR"), the Palestine Investment Fund ("PIF") and the Palestine National

18

und ("PIF")" is granted only to the extent of dismissing the portion of the crossclaim seeking turnover of funds belonging to the Palestinian Monetary Authority, and the remaining portion of the cross-claim is severed and shall continue under Index Numbers 107777/05 and 105521/05; and it is further

ORDERED, ADJUDGED and DECLARED that the Palestinian Monetary Authority is a separate juridical entity from the Palestinian Authority and the money in its name, restrained by the Bank of New York, should be released; and it is further

ORDERED that the undertaking in the amount of $30,000,000 set by the court, is discharged; and it is further

ORDERED that the Clerk shall enter judgment accordingly.

ENTER

Dated: April 2, 2007

_____
J.S.C.

FILED

APR 10 2007

COUNTY CLERK'S OFFICE
NEW YORK

Norman Goodman
Clerk

19

REME COURT OF THE STATE OF NEW YORK
NTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
PALESTINE MONETARY AUTHORITY

                    PLAINTIFF

        AGAINST

DAVID STRACHMAN, AS ADMINISTRATOR
OF THE ESTATE. OF YARON UNGAR, ET AL.

                                              INDEX NUMBER
                                              107777/05

                    DEFENDANT
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X



                    order and

        JUDGMENT


    ATTorney's name    SCOTT R. EMERY
                       LYNCH DASKAL EMERY LLP
        ADDRESS:  264 WEST 40th STREET
    CITY, STATE   NEW YORK, NY  10018
    TELEPHONE     212-302-2400


FILED
APR 10 2007,
12:15 P M
AT
N.Y., CO. CLKS OFFICE