6-16-05 Hearing

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
* * * * * * * * * * *  CIVIL ACTION
PALESTINE MONETARY   *  NO. 05-261L
AUTHORITY            *
                     *
VS.                  *  JUNE 16, 2005
                     *
DAVID STRACHMAN, et  *
al                   *  PROVIDENCE, RI
* * * * * * * * * * *
```

HEARD BEFORE THE HONORABLE RONALD R. LAGUEUX

SENIOR DISTRICT JUDGE

(PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION)

APPEARANCES:

FOR THE PLAINTFFS:    HAIG V. KALBIAN, ESQ.
                      Kalbian Hagerty, LLP
                      888 17th Street
                      Suite 1000
                      Washington, DC  20006
                      (202) 223-5600

FOR THE DEFENDANTS:   DAVID J. STRACHMAN, ESQ.
                      McIntyre, Tate, Lynch & Holt
                      321 South Main Street
                      Providence, RI  02903
                      (401) 351-6095

Court Reporter:       Anne M. Clayton, RPR
                      One Exchange Terrace
                      Providence, RI  02903

2

1            THE COURT:  Good afternoon, everyone.  The

2     matter before the Court is Civil Action 05-261L,

3     the Palestine Monetary Authority versus David

4     Strachman as Administrator of the Estates of Yaron

6-16-05 Hearing

5      Ungar and Erfat Ungar, et al.

6              The matter is here on plaintiff's motion

7      for a preliminary injunction.

8              Will the attorneys identify themselves for

9      the record, please.

10             MR. SARLI:  Good afternoon, your Honor.

11     Mike Sarli for the Palestinian Monetary Authority.

12     And I'd like to introduce your Honor to Haig

13     Kalbian, who is counsel also for the Palestinian

14     Monetary Authority.

15             With your permission, your Honor, he will

16     be presenting the argument today.

17             THE COURT:  All right.  I've just granted

18     his application to appear pro hac vice.

19             MR. KALBIAN:  Thank you, your Honor.

20             MR. STRACHMAN:  Good morning, your Honor.

21     David Strachman for the defendant.  With me is

22     Robert Tolchin who represents the defendant in the

23     same parallel action that was filed last Monday in

24     New York.  We also filed a motion for admission

25     pro hac vice.

                                                      3

1              THE COURT:  I've granted that.

2              MR. STRACHMAN:  Thank you.

3              THE COURT:  Well, I'll hear from the

4      plaintiff's side first.  Is the plaintiff

5      presenting any evidence?

6              MR. KALBIAN:  No, your Honor.

7              THE COURT:  All right.  You may proceed.

8              MR. KALBIAN:  Thank you, your Honor.

9      Again, my name is Haig Kalbian.  I'm with the law

6-16-05 Hearing

10      firm of Kalbian Hagerty, LLP, Washington, D.C.,
11      and I represent the plaintiff, Palestine Monetary
12      Authority, in this matter.
13              Your Honor, just by way of background,
14      initially, this matter is obviously related to an
15      underlying case that's been before your Honor for
16      a number of years.  And from the caption of the
17      case it appears to be a case that was filed back
18      in 2000, the Estate of Ungar against the various
19      parties including the Palestine Authority and the
20      PLO.
21              The reason we are here, however, your
22      Honor, is as a result of an injunction that this
23      court issued on May 5th of this year.  And this is
24      an injunction that was issued in the underlying
25      case, I'll call it for ease of reference the Ungar

                                                        4

1       litigation.  It was an injunction that was sought
2       or obtained by the plaintiffs in the Ungar
3       litigation.
4               Now, it's critical to note at the outset
5       that the Palestine Monetary Authority was not a
6       defendant in the Ungar litigation.  Your
7       injunction, your Honor, appears to be clear on its
8       face.  However, four days later on May 9th,
9       counsel for the Ungar plaintiffs proceeded to
10      prepare a document that's attached as Exhibit 2,
11      your Honor, to the Complaint that we filed.
12              And it's important to look closely at this
13      document.  It was prepared by, as I said, by the
14      attorney for the judgment creditors, the

6-16-05 Hearing

15      plaintiffs in the Ungar litigation.  And it
16      purports to be a notice of injunction issued
17      pursuant to Federal Rule Civil Procedure 65(d).
18              And we would respectfully submit that this
19      notice of injunction prepared by counsel four days
20      after this Court issued an injunction
21      impermissibly expanded the scope of your Honor's
22      injunction.
23              The document purports to be issued
24      pursuant to Federal Rule Civil Procedure 65(d).
25      We've checked 65(d), actually checked the entire

                                                        5

1       Rule 65.  I have not seen anything in the rules
2       that permits counsel to piggyback, if you will, on
3       an injunction and then sui sponte prepare a notice
4       of injunction that alters, expands and radically
5       changes, we believe, the intent of the injunction
6       that your Honor issued on May 5th.
7               The important language in this notice of
8       injunction, again, this is Exhibit 2 to the
9       Complaint, appears in the middle of the page, your
10      Honor.  It says, "Take further notice that the
11      injunction applies to all assets of the PA and the
12      PLO how ever titled, and that assets of the PA and
13      PLO are held and/or titled under the names" and
14      then there's a string of entities.  I don't
15      believe any of those entities were defendants in
16      the Ungar litigation.  And the last entity
17      mentioned is the Palestine Monetary Authority as
18      your Honor can see.
19              Now, this statement, your Honor, is not

6-16-05 Hearing

20      true.  As we've demonstrated in the affidavit that
21      we've submitted by the governor of the Palestine
22      Monetary Authority, the PMA for short, does not
23      hold any assets of the PA or the PLO nor are the
24      assets of the PA and PLO held or titled under the
25      names of the PMA.

                                                        6

1               Now, equipped with this notice of
2       injunction, counsel for the judgment creditors
3       proceeded to serve the Bank of New York.  We
4       believe he may have served other banks as well,
5       but for our purposes he served the Bank of New
6       York in New York.  And upon receipt of this notice
7       of injunction along with the injunction, to be
8       fair, the Bank of New York proceeded to freeze
9       approximately $30,000,000 essentially of the PMA's
10      money.  That was done on or about the 18th of May
11      or about nine days after this notice of injunction
12      is dated.
13              The PMA through its governor found out
14      about this at or about the same time, May 18th.
15      Obviously, it raised a lot of concern.  The PMA
16      tried to contact the Bank of New York to try to
17      find out what exactly was happening.  The PMA then
18      moved as expeditiously as possible, given that the
19      PMA is located on the other side of the globe, to
20      get as much documentation together including this
21      report prepared by its auditors, which is
22      instructive, we believe.  This is Exhibit 4 to the
23      Complaint, issued by the international accounting
24      firm of Saba and Company, which states -- and this
                        Page 5

6-16-05 Hearing

25          is dated May 25th, which states that, in fact, the

                                                              7

1          PMA is a legal person independent of the PA and
2          proceeds to lay out on the balance sheet of the
3          PMA the fact that we believe is crystal clear that
4          the PMA or that the PA and PLO assets are not held
5          or titled in the name of the PMA, notwithstanding
6          the notice of injunction that was issued by
7          counsel for the judgment of creditors.
8                    Events began to move rather fast.  The
9          governor of the PMA, Mr. Abed, arrived in the U.S.
10         the weekend of Memorial Day equipped with much of
11         this documentation, including but not limited to
12         Exhibit number 6 -- I'm sorry, Exhibit 4 to the
13         Complaint.  And we retained counsel, myself, and
14         my firm in Washington over the Memorial Day
15         weekend.
16                   And Tuesday after Memorial Day, we moved
17         expeditiously to file papers in New York.  We
18         tried to file papers on Tuesday.  We were
19         unsuccessful.  We tried to file some papers,
20         actually, in the case that was open by
21         Mr. Strachman, whereby he domesticated the Rhode
22         Island judgment, this Court's judgment.  And we
23         were told by the clerk, well, you're not a party
24         to that case; you need to open a new case.
25                   We did that on Friday, June 3rd.  On

                                                              8

1          Friday, June 6th, we appeared before a Supreme
2          Court judge in New York, who basically referred

                         Page 6

6-16-05 Hearing
```
 3     us, if you will, back to Rhode Island.

 4              THE COURT:  But he has the matter.  He's

 5     hearing the matter.

 6              MR. KALBIAN:  I'm sorry?

 7              THE COURT:  He's hearing the matter.

 8              MR. KALBIAN:  He's hearing the matter.

 9     Actually, he's passed the case on to a different

10     judge in New York.  I don't know if your Honor's

11     had a chance to look at the transcript.

12              THE COURT:  I did.  I read the whole

13     transcript.  I've read all the material, every

14     word, every bit of material that you've submitted

15     to me.  And it's clear that the case is pending in

16     the Supreme Court of New York.

17              MR. KALBIAN:  Yes, your Honor.  And we

18     filed it in New York for a reason.

19              THE COURT:  It was only a suggestion on

20     his part that you come and visit with me.  Whether

21     that visit is going to be fruitful is something

22     else again.

23              MR. KALBIAN:  I understand.  We took it as

24     a strong suggestion, your Honor, and I think since

25     the injunction and the notice of injunction
```
                                                  9

```
 1     emanated from Rhode Island and as a result of the

 2     Ungar litigation, we felt that it would be best to

 3     come back before your Honor to seek --

 4              THE COURT:  One of the problems you have

 5     is that it seems to me an indispensable party is

 6     the Bank of New York, and it is not a party to

 7     this litigation that you have filed.
```
                        Page 7

6-16-05 Hearing

8          So I, frankly, don't know what you're

9     asking me to do.  You're asking me to issue some

10    sort of a preliminary injunction, but I don't know

11    what that means.  Do you want me to enjoin the

12    Bank of New York from doing something?

13          MR. KALBIAN:  No.  What we'd like your

14    Honor to do is look at the injunction and then

15    look at the notice of injunction that has been

16    prepared.

17          THE COURT:  I have.

18          MR. KALBIAN:  And to basically deem the

19    notice of injunction void because it

20    impermissibly, we would respectfully submit,

21    expands the scope of the injunction and it

22    contains a statement that the Bank of New York

23    relied on, that is that the assets of the PA and

24    PLO are titled in the name of PMA.  That simply,

25    your Honor, is not true.

                                                    10

1          THE COURT:  I don't know what the Bank of

2     New York relied on.  What's clear from my

3     injunction is that the PA and the PLO and any

4     agents who are enjoined from sending any funds or

5     properties outside this country.  Now, the Bank of

6     New York must have made a decision that they

7     thought that the PMA was an agency of the PA or

8     the PLO and had funds of the PA and PLO.  And

9     therefore, they froze because otherwise they could

10    be held in contempt for not observing the

11    injunction.  But the injunction runs against the

12    PA and the PLO and any agents.

                        Page 8

6-16-05 Hearing

13          And that's the question I'd have to decide
14    here.  You show me that the Monetary Authority is
15    not an agency of the PA, and you show me that the
16    Authority has no funds belonging to the PLO or the
17    PA.
18          MR. KALBIAN:  Well, I think to address
19    your latter part --
20          THE COURT:  That's what you have to do in
21    order to get any kind of relief from me, but
22    still, it seems to me that any relief that I might
23    grant you is of no consequence, because it's
24    really the Bank of New York that has frozen these
25    funds.  And I don't know why the Bank of New York

11

1     froze these funds.
2           MR. KALBIAN:  Well, we believe the Bank of
3     New York froze the funds because of the notice of
4     injunction.
5           THE COURT:  We don't know that.  And we
6     don't have anybody here from the Bank of New York
7     who will tell us why they acted that way and why
8     they're concerned about this matter.
9           MR. KALBIAN:  As I read the injunction,
10    your Honor, and obviously I have not been involved
11    in the Ungar litigation at all nor has my client,
12    but as I read your Honor's injunction, it says,
13    "It is hereby ordered and decreed that the PA and
14    the Palestinian Liberation Organization and their
15    officers, agents, servants, et cetera are hereby
16    prohibited, restrained and enjoined from
17    withdrawing, transferring, assigning, et cetera,

Page 9

6-16-05 Hearing
18          or in any way removing or affecting a disposition
19          directly or indirectly any and all assets of the
20          PA and/or the PLO how ever titled."
21               So assuming arguendo without conceding
22          that the PMA, and again we don't concede this, is,
23          in fact, an officer, agent, servant, the fact of
24          the matter is the PMA does not meet the second
25          part of this injunction.  And that is that the PMA
                                                           12

1           does not hold any assets of the PA and/or the PLO.
2                THE COURT:  That's a question that I'd
3           have to decide, and it seems to me it requires a
4           good deal of evidence.
5                MR. KALBIAN:  I understand, your Honor.
6           And frankly --
7                THE COURT:  I had decided off the top of
8           my head based on the papers that I've read, it
9           would appear to me that the Authority does have
10          assets of the PA and the PLO because of certain
11          transactions that were stayed here indicate to me
12          that funds of the PA and PLO were being
13          transferred at least through the Bank of New York
14          to various offices or embassies, whatever they may
15          be titled.
16               MR. KALBIAN:  And you make a good point,
17          your Honor.  And if I could kind of walk you
18          through the schedule that's attached as Exhibit 6
19          to our papers, which is the document generated by
20          the Bank of New York.  And you see here from that
21          schedule that the Bank of New York has apparently
22          frozen assets belonging to the PA and the PLO

6-16-05 Hearing

23    pursuant to your Honor's injunction which they

24    received.

25          However, they've also lumped together

13

1    other transactions involving the PMA and the PMA's

2    name, the Palestine Monetary Authority's name is

3    not mentioned in your injunction.  It's only

4    mentioned, your Honor, in the notice of

5    injunction.

6          So arguably, Mr. Strachman may, in fact,

7    be entitled to some of these funds belonging to PA

8    and the PLO that had been ensnared or frozen by

9    the Bank of New York.  But that's not my client.

10    My client is the Palestine Monetary Authority.

11    And just because they show up, I would

12    respectfully argue, on the same schedule generated

13    by the Bank of New York as the PA and the PLO does

14    not make them an agent or a party that is holding

15    assets of the PA or the PLO.  And all the Court

16    has in front of it at this time is Mr. Abed's

17    affidavit.  He's the governor of the PMA, an

18    educated gentleman, degree from University of

19    California at Berkeley, formerly with the

20    International Monetary Fund where he held one of

21    the highest positions.  He's given, your Honor, a

22    sworn declaration under penalty of perjury, and if

23    he was here, I would put him on the stand to

24    testify.  Obviously events have moved fast.  He

25    had to go back to take care of the business of the

14

1    PMA.

Page 11

6-16-05 Hearing

2           But to the extent that this Court wishes

3      to schedule a full evidentiary hearing on a

4      preliminary injunction, we'd be delighted.  In

5      fact, I've got lined up people from U.S. Treasury,

6      people from the Federal Reserve in New York who

7      are willing to vouch for the fact that the PMA

8      does not, does not hold assets of the PA or the

9      PLO and/or assets of those entities, judgment

10     debtors in the Ungar litigation are not titled in

11     the name of the PMA.  And that's why we're here.

12     Suddenly went from these judgment debtors, the PA

13     and the PLO, and without any due process, without

14     any hearing, a notice of injunction appears that

15     suddenly implicates my client without any hearing,

16     without any due process.  And of course, no --

17     there's been no undertaking posted by the Ungar

18     plaintiffs, the judgment creditors, which my

19     reading of Rule 65 especially when you're seizing

20     the assets of a non-party, there's irreparable

21     harm here every day that this situation continues.

22     It is creating potentially a chaotic situation in

23     the Palestinian territories.

24           THE COURT:  They can remedy the situation

25     by posting a bond of $30,000,000 in New York.

                                                    15

1      Those funds would be freed.  That's the way they

2      can get rid of this problem, and then let it be

3      tried on the merits at some later time.

4           But the problem, the big problem I have is

5      that I don't know why the Bank of New York acted

6      the way they did.  And they're not a party to this

                        Page 12

6-16-05 Hearing

7       litigation.  As a matter of fact, it would seem to

8       me that the proper place for all these arguments

9       are in New York where the judgment has been

10      registered and where this action has been taken in

11      order to collect the judgment.  And it is pending.

12      It's pending in the Supreme Court of New York with

13      all the parties before that court, and it's not a

14      question of the interpretation of my order.  My

15      order is clear.  What has to be determined now are

16      facts.  And maybe you're prepared to present those

17      facts, but it seems to me they ought to be

18      presented to the Supreme Court judge in New York.

19              MR. KALBIAN:  Well, obviously that --

20              THE COURT:  Even if you prove what you say

21      you could prove here, that there are no funds of

22      the PA or PLO involved in this $30,000,000, the

23      fact of the matter is it's the Bank of New York

24      that froze, and I don't know why they froze.

25              MR. KALBIAN:  I can represent to the Court

                                                          16

1       that I've had conversations with counsel for the

2       Bank of New York, and they've told me they relied

3       on the injunction, the notice of injunction

4       prepared by the attorney for the judgment

5       creditors, and a restraining order issued by a

6       court in New York that mirrors, essentially, the

7       language of the notice of injunction.

8               So if you take it back, the problem I

9       would respectfully submit is this notice of

10      injunction.  That triggered the whole sequence of

11      events.  And I believe that this court is best

6-16-05 Hearing

12      placed respectfully to look at its injunction, to
13      look at this notice of injunction and see that the
14      two don't add up, don't match up.
15          THE COURT:  Well, they don't.  Of course
16      they don't.  But the question is, the question
17      is -- the two questions that I posed.  Number one,
18      is the Palestine Monetary Authority an agency of
19      the PA or the PLO.  On the face, it looks like it
20      is.  It was created by Yassar Arafat in both
21      capacities as the head of the PA and as the head
22      of the PLO.
23          MR. KALBIAN:  It was actually created by
24      the PLO and by the Israelis as a result of the
25      Oslo Accords.

                                                    17

1           THE COURT:  It doesn't matter what caused
2       it to be created.  It was created by the Palestine
3       Authority as an agency of the Palestine Authority.
4       And then the next question is do they hold funds
5       of the PLO or the PA?  You say no.
6           MR. KALBIAN:  Absolutely.
7           THE COURT:  And I don't know that.  That
8       would have to be proven to me.  And I'm suggesting
9       that maybe the best place to prove that is in the
10      Supreme Court of New York --
11          MR. KALBIAN:  But I would respectfully --
12          THE COURT:  -- where the Bank of New York
13      is a party.  It is not a party here.
14          MR. KALBIAN:  I'd respectfully submit to
15      you that the record as it stands now is such that
16      you have the George Abed affidavit, and that's
                        Page 14

6-16-05 Hearing

17    unrefuted, your Honor.  And if you look at the
18    Abed affidavit --
19        THE COURT:  There may be some questions of
20    credibility there.  I've read it.  And it seems to
21    me that, number one, it's all hearsay, because he
22    just came on board a short time ago.  So he can't
23    testify as to what happened when this was created,
24    whether any funds of the PA were used as capital
25    to capitalize this operation.  He makes a

                                                        18

1    statement that somehow the funds came out of the
2    air, came out as a result of profits.
3        MR. KALBIAN:  Out of interest income,
4    exactly, generated by the PMA.
5        THE COURT:  Well, it seems to me there has
6    to be a fund to begin with for some company to
7    start operating or some entity to start operating.
8    So I have some serious questions about that.  I'd
9    like to see him cross-examined.  I'd like to ask
10    him some questions.
11        MR. KALBIAN:  Your Honor, I would be
12    delighted to bring him here.  I think he makes a
13    very credible witness, as I've said.  I've got
14    people who are in Treasury, in the U.S. Treasury
15    Department now and who were formerly with Treasury
16    who assisted and have given technical assistance
17    to the PMA who have personal knowledge as to the
18    declarations made in the affidavit, the statements
19    made in the affidavit.
20        THE COURT:  All right.
21        MR. KALBIAN:  This PMA, if I may conclude,
                    Page 15

6-16-05 Hearing

22          your Honor, briefly, the law that's attached to
23          the papers, I think it's attached to Mr. Abed's
24          affidavit.
25                    THE COURT:  I saw it.  I've read it all.
                                                          19

 1                    MR. KALBIAN:  For example, it says that
 2          the PMA shall hold currency or gold reserves of
 3          the Palestine Authority.
 4                    Well, the fact of the matter is the
 5          Palestinians don't have their own currency.  It's
 6          not a sovereign state so these things have not
 7          happened.  This law was created back in '93.  The
 8          events on the ground have been such since '93 that
 9          most of the elements or articles in this law that
10          created the PMA created by the Israelis and by the
11          PLO have not happened.
12                    For example, the PMA is not the fiscal
13          agent for the PA.
14                    THE COURT:  I understand those things.  I
15          understand.  I just spent the last five years
16          making a determination that the PA and the PLO did
17          not have sovereign immunity.  And now I hear
18          arguments that are exactly that.  They are not
19          sovereign.  And it's taken all those years to
20          determine that.  What we've had is a great
21          run-around in this case from the people
22          representing the Palestinian Authority and the
23          PLO.
24                    MR. KALBIAN:  Those are not my clients,
25          your Honor.
                                                          20

6-16-05 Hearing

1          THE COURT:  I understand that.  And I
2    understand that there is a judgment here against
3    the PA and the PLO for $116,000,000, also against
4    the Hamas for that amount.  And the plaintiffs in
5    the Ungar case are trying to collect.  They're
6    going around trying to find out where these assets
7    are held.
8          MR. KALBIAN:  And apparently, they've been
9    able to snare from the schedule of the Bank of New
10   York some funds of those judgment debtors at the
11   Bank of New York.  We're not --
12         THE COURT:  And that's where this case
13   belongs, because I've done my job.  I've entered
14   the judgment.  There are no funds in Rhode Island.
15   I just refused yesterday to appoint a receiver.
16   And Mr. Strachman will have to go to New York,
17   Washington and other places and institute
18   proceedings there to collect on the judgment.  And
19   that's where this litigation belongs at this
20   point.
21         MR. KALBIAN:  But, I think, your Honor,
22   respectfully, if your Honor would give some
23   clarity to this injunction, if your Honor would
24   look at the notice of injunction that
25   Mr. Strachman is using to piggy-back on and go to
                                                     21

1    all these jurisdictions, what could potentially
2    happen is you'd have 50 different lawsuits in 50
3    different states.
4          However, if your Honor would hold an
                    Page 17

6-16-05 Hearing

5     evidentiary hearing, where I believe, and I would

6     respectfully submit we can make it crystal clear

7     to this Court that this notice of injunction is

8     void, it is an impermissible expansion of your

9     Honor's injunction.

10           THE COURT:  If I rule that, that's not the

11     end of the matter.  Even if I make that ruling

12     right now today, it's not the end of the matter.

13     It's just the beginning of the matter.

14           MR. KALBIAN:  If I read what the New York

15     judge said on June 3rd, his first reaction was why

16     are you here.  Go get clarification from the

17     judge, the federal judge in Rhode Island who

18     issued this.  So --

19           THE COURT:  My injunction is absolutely

20     clear.

21           MR. KALBIAN:  No doubt about it.

22           THE COURT:  And this procedure is now in

23     New York.  It's in New York because the judgment

24     was registered there, and there are proceedings to

25     collect on that judgment.  There are proceedings

22

1     to reach funds and assets of the PLO and the PA.

2     And that's where this case belongs.  And whatever

3     I say about this at the moment is really

4     superfluous, because the Bank of New York can do

5     whatever it wants about freezing funds.  If it is

6     frightened about being held in contempt or

7     whatever reason, they can freeze those funds.  And

8     that's obviously what they did.

9           But wholly apart from the notice, my

Page 18

6-16-05 Hearing

10    injunction is clear.  If the Palestine Monetary
11    Authority is an agency of the PA or PLO and it
12    holds funds of the PA or PLO, it is subject to
13    that injunction.
14         MR. KALBIAN:  But it doesn't hold funds of
15    the PA and PLO.
16         THE COURT:  That's a question of fact that
17    has to be determined, and I am not in a position
18    to determine that.  And what I'm suggesting is
19    those facts should be determined in the Supreme
20    Court of New York where this proceeding is
21    pending.  I read the judge's comments.  He wants
22    to throw it back to me.  Well, it's not the first
23    time that a judge is sort of passing the buck.
24    And this is where this proceeding is.  It's in the
25    Supreme Court of New York at the moment.

                                                    23

1          Frankly, I think that's a mistake on
2     plaintiff's part.  It should be in the Southern
3     District of New York, the judgment should have
4     been registered there.  This should be a federal
5     case where it belongs.  But the fact of the matter
6     is if you want to spend time here in this court
7     bringing witnesses from all over the world, I will
8     accommodate you.
9          MR. KALBIAN:  We're ready to do that, your
10    Honor.
11         THE COURT:  The point is that I'm going
12    away tomorrow morning, and I won't be back until
13    July 6th, and I'll only be in for one day at that
14    time.  And then I have one week, the week of July
                       Page 19

6-16-05 Hearing

15    11th that I will be here.  And I have several
16    matters down for that week, which require
17    evidentiary hearings and other matters.  But I
18    will schedule it that week, and you can bring all
19    the witnesses.  You see most of the time when I
20    hear a motion for preliminary injunction, I
21    require testimony.  I'm not going to decide things
22    off the top of my head.
23             MR. KALBIAN:  I understand.  If your Honor
24    recalls, I think it was yesterday when this
25    particular hearing was set.  Obviously, had we had

24

 1    the luxury of time -- and that's what we're hoping
 2    to do.  However, in the meantime, your Honor, I
 3    would respectfully request that the Court order
 4    these judgment creditors to post a surety, because
 5    if they're wrong, and we believe that they're
 6    wrong, damages are being incurred.  Damage is
 7    being incurred by the PMA.
 8             If you look at the Rule 65, your Honor, it
 9    makes it very clear, I would submit, that an
10    injunction to be issued there needs to be a bond
11    or some sort of an undertaking.  And --
12             THE COURT:  I don't think it's appropriate
13    in this case.  It's your client that has to put up
14    a bond to free those funds right now.  That's the
15    way out for your client.
16             MR. KALBIAN:  We're ready to do that, your
17    Honor.  If your Honor orders that, we're ready to
18    post and --
19             THE COURT:  That belongs in New York.

6-16-05 Hearing
20      It's not before me.  Now, if you want to have a
21      full-blown hearing on a preliminary injunction in
22      this case, I'll give it to you.
23              MR. KALBIAN:  Thank you, Judge.
24              THE COURT:  I don't guarantee there's
25      going to be any favorable result to you as a

                                                        25

1      result of that.
2              MR. KALBIAN:  I understand.
3              THE COURT:  But I'll give you the hearing,
4      and then we'll see where we go from there.  And I
5      suggest to you that there's an indispensable party
6      that is not a party in this case, and that's the
7      Bank of New York.  Bank of New York is a party to
8      the Supreme Court action in New York.  And so I'm
9      suggesting that's the most appropriate place to
10      get these matters resolved.  I have a very full
11      schedule.
12              I haven't heard from Mr. Strachman yet, so
13      let me hear from him what his positions are on
14      these matters, and then I'll make a final
15      determination of when I set this down for hearing
16      on preliminary injunction.
17              MR. KALBIAN:  Thank you, Judge.
18              MR. STRACHMAN:  Good afternoon.  Thank
19      you, your Honor.  There are a few points I'd like
20      to raise.  First, there is absolutely no
21      justification or basis for this case being here.
22      There is no subject matter jurisdiction in this
23      case at all.  The case is between PMA, an agency
24      of PA and an estate, my client, and my main

Page 21

6-16-05 Hearing
25          clients who are thankfully alive who live in

26

1          Israel.  As this Court knows, over five years of
2          litigation, Yaron Ungar is not a citizen of any
3          state of the United States.  Neither are the other
4          defendants in this case, the plaintiffs in the
5          initial case.
6                    So this is a case between two foreign
7          entities.  There's no subject matter jurisdiction
8          in this case.  It says very clearly in 1332, my
9          brother cites the wrong subsection where he refers
10         to a domiciliary of the United States.  There is
11         none.  The end of the statute says very clearly,
12         it's in Section (c)(2).  It says very clearly that
13         when you sue an estate or administrator, you look
14         to the citizenship of the domiciliary of the
15         deceased.  And as we know from five years of
16         litigation here, that was in Israel.
17                   So there's no subject matter jurisdiction
18         over this case.
19                   Second of all, my brother is now asking
20         for basically a third bite at this apple.  While
21         this case was pending, while the case was on
22         appeal and had not yet -- mandate had not issued,
23         under the Hustler versus Keeton rule, we could not
24         go to Federal Court.  So we domesticated the
25         judgment in state court consistent with the Second

27

1          Circuit's ruling in Hustler versus Keeton.  We did
2          that.
3                    And on April 21, before the preliminary
                                  Page 22

6-16-05 Hearing

4    injunction that my brother complains of, three

5    weeks before that, we domesticated the judgment

6    there, and we sought a statutory restraining

7    notice.  In New York under New York law, there's a

8    statutory restraining notice that creditors can

9    file.  And I filed a copy of the one that we filed

10    of April 21.  And that's in document number 5.

11           What prevents this money from being

12    released is that restraining notice.  And in

13    document number 6 is, in the documents I provided

14    to the Court this afternoon, is the response of

15    the bank in the case of Estate of Yaron Ungar

16    versus Palestine Authority.  In that case, in that

17    state domestication case, these funds are being

18    held.  Not because of this restraining order, but

19    because of the restraining notice that was issued

20    in New York.

21           So the defendants had an opportunity, the

22    plaintiffs here, rather, had an opportunity to go

23    into court there and say we are an aggrieved

24    party; we want to be heard in this action, and

25    they failed to do so.

                                                       28

1           What they did is a week and a half ago

2    file a separate suit, a suit against -- they had

3    the audacity to sue these victims in state court

4    in a separate action.  They don't bring to the

5    Court's attention the fact that there was a

6    restraining notice in a parallel action.  They

7    sort of skip over it here, too, by the way.

8    That's a separate matter that's not really brought

6-16-05 Hearing

9       to the Court's attention.   They bring a separate

10      suit.   In that suit, as your Honor knows from

11      reading the transcript, the judge set a discovery

12      schedule and a briefing schedule.

13              By the end of June, this matter is going

14      to be briefed.   It's going to be concluded in New

15      York, and they would have us now have a second

16      bite at the apple up here in Rhode Island.   It's

17      already engaged.   Both counsel who were in New

18      York were at that hearing are here today.   So

19      there's no need for this.   This is superfluous.

20      This is a way to try to bully their way into a

21      ruling that they didn't like last Monday when the

22      judge said to them there is no irreparable harm,

23      I'll set it down for a schedule.   That's when, by

24      the way, as the Court knows Mr. Abed was present,

25      and he saw fit to show up last week in New York.

                                                    29

1       And he showed up and he testified, and he gave his

2       spiel just as he did in his affidavit.   Of course,

3       he was unable to come to Court today, and we can't

4       cross-examine him.

5               But that matter is already underway.   And

6       to come to this Court now to file two separate

7       actions against these victims and to cause us to

8       litigate these issues when they're already being

9       litigated in the very first proceeding that was

10      filed at least I think it was April 20th but that

11      restraining notice was April 21 is absurd.

12              And now what you're going to have if the

13      Court grants a hearing in this matter in July,

                        Page 24

6-16-05 Hearing

14          we'll have two separate proceedings on this very

15          same complaint, virtually identical allegations,

16          as well as the third and original really first

17          proceeding, which is the turn-over proceeding that

18          we filed in the domestication action.  It's an

19          absurdity.  It's turning this into another circus,

20          and we're going to be here for another five years

21          in three different courts with the continued sort

22          of shell game that we've seen with the Palestinian

23          Authority and the PLO the way they litigate

24          matters.

25               So I would urge the Court to take the bull

                                                    30

1          by the horns in this case and to dismiss this

2          action.  Your Honor said very clearly in the

3          receivership motion that we filed that collection

4          actions are not to proceed here in Rhode Island

5          but to proceed in the various jurisdictions.  They

6          now are begging us to take other action in a sense

7          here.  We'll be litigating all of these claims now

8          by any claimant, by any alleged third party here

9          in Rhode Island.  Just the opposite of what you

10          said yesterday you weren't going to do and weren't

11          going to allow the plaintiffs to do.

12               I would also ask the Court to disregard

13          any of the allegations in Mr. Abed's affidavit.  I

14          know that effectively you're not granting the

15          relief today, but I want it to be clear, and I

16          just want to mention very clearly for the Court

17          the documents that we provided, because it says

18          very clearly everything that your Honor just said

6-16-05 Hearing

19        about the nature of the PMA and their source of

20        authority and their genesis, if you will.

21             We have letters from Mr. Abed, one to me,

22        one to someone else on effectively Palestine

23        National Authority stationery indicating clearly

24        that the PMA is an agency, subdivision, et cetera,

25        of that agency.

31

1             We have in document number three, which I

2        provided and attached for the Court, the Oslo

3        Accord, which says very clearly that the PA is

4        going to act as the sole financial agent of the

5        PA.  The PMA, I think I misspoke.  The PMA is the

6        sole financial agent locally and internationally.

7        That exact same language is carried over into the

8        document attached to Mr. Abed's affidavit and also

9        that I provided, which is effectively the charter

10        for the PMA.

11             It says in several places, and I've

12        highlighted all those sections, the exact same

13        type of language.  They're the guys holding the

14        money for the PA and the PLO.  And then we also

15        know from the litigation here and on previous

16        occasions in a different context we provided to

17        the Court a copy of a restraining order that was

18        entered in the International Technologies case

19        against the PLO.

20             In that very case, similarly, these

21        a/k/a's of the PA and the PLO, a whole laundry

22        list of them, were restrained by the Court exactly

23        for this type of reason.  And that's, in fact, how

6-16-05 Hearing

24          we got some of these names.  And we disclosed this
25          to the Court years ago, where for a variety of

                                                          32

1           other reasons we brought this information to the
2           Court's attention.
3                 Then on the bottom of the list it says
4           very clearly that that judge restrained the
5           Palestine Monetary Authority.  And the piece de
6           resistance, if you will, is the fact that Judge
7           Martin ruled very clearly in his decision that was
8           upheld by your Honor, that was not objected to,
9           this portion of the decision was not objected to
10          by the defendants, the PA and the PLO, and was not
11          appealed by them, and that is that the PMA is a
12          financial arm of the PA and the PLO.
13                So we have overwhelming evidence to
14          suggest that there's a tremendous credibility
15          problem with Mr. Abed's statements.  And that what
16          he's saying about the nature of their authority,
17          even if he were allowed to testify as an expert in
18          foreign law, which he isn't; he's an economist,
19          even if he was here and was willing to be
20          cross-examined.
21                But then we take a look at, if I could for
22          just a moment, your Honor, if we look at the
23          documents that are in Item 5, Tab 5 of the
24          materials -- excuse me, Tab 6 of the materials
25          that we provided, if we look at the very accounts

                                                          33

1           that are in question as your Honor indicated

                          Page 27

6-16-05 Hearing
2       before, these are transfers virtually exclusively
3       between and on behalf of the PA, the PLO and in
4       large measure the Palestinian Monetary Authority.
5              And if we look at the statement, it says
6       very clearly from the bank, the originator,
7       meaning the guy who wrote the check, not the guy
8       who washed the money, but the guy who wrote the
9       check is the Palestine Monetary Authority.  It's
10      their money.  It's the money that they got.  And
11      their charter says if they have profits, they go
12      to the PMA -- PA rather.  If they have
13      deficiencies, they have to be made up by the PA.
14             These are the very funds that they are
15      holding on behalf of the PA and the PLO.  They
16      have 57 entries.  The overwhelming majority of
17      entries here are directly described as PA or PLO
18      money.  The other amounts are very clearly, as we
19      presented here, very clearly significantly
20      evidence belong to the PA.  The PA itself is
21      nothing more than an agency.
22             So I would ask the Court to dismiss this
23      case.  There's no jurisdiction.
24             THE COURT:  There's no motion to dismiss.
25      There's no motion to dismiss at this point, and
                                                        34

1       all that's before the Court is a motion for a
2       preliminary injunction.  And my inclination is to
3       set that motion for preliminary injunction down
4       for an evidentiary hearing, and then I'll make
5       determinations.  If you want to file a motion to
6       dismiss for lack of jurisdiction, maybe that will
                        Page 28

6-16-05 Hearing

7      take precedence before I hear this matter, and

8      maybe this matter will be gone.

9            But as of the moment, I don't hold out

10     much hope that there will be any kind of

11     preliminary injunction issued in this case.   So

12     maybe the parties are just spinning their wheels

13     here.

14           MR. STRACHMAN:   The concern that I have,

15     Judge, the wheels have already started rolling in

16     New York.

17           THE COURT:   That's where the case belongs.

18     I will tell you right now that's where the case

19     belongs.   It's a New York case at this point.   And

20     what funds are frozen are frozen in New York.

21     They're frozen pursuant to New York court

22     authority, and it's a New York judge that will

23     have to make a determination on this matter.

24           It appears to me that any determination

25     that I make is really academic in this case, and

                                                          35

1      probably this case will be dismissed.   But for the

2      time being, I will give the plaintiff an

3      opportunity to have an evidentiary hearing.   We

4      may be wasting our time, but we'll see.   I'd like

5      to hear the evidence, to be perfectly frank, so

6      that I am certain that also factually I'm

7      satisfied what occurred here.

8            MR. STRACHMAN:   So to be clear, your Honor

9      is not in any way issuing an order with respect to

10     the New York proceedings.

11           THE COURT:   Absolutely not.

6-16-05 Hearing

12          MR. STRACHMAN:   And those will continue on

13     as already --

14          THE COURT:   Whatever New York state courts

15     did, that's within their jurisdiction.  What I

16     have before me now is this case that was filed

17     requesting a temporary restraining order and

18     preliminary injunction.  I've denied the temporary

19     restraining order.  I will hold in abeyance any

20     determination on the request for a preliminary

21     injunction and hold an evidentiary hearing.

22     That's as far as we go at this point.

23          MR. STRACHMAN:   In light of that, then,

24     Judge, we'd like to have an order with respect to

25     discovery so that we're not surprised here as to

36

1     who these witnesses are who are coming here.  We'd

2     like to have them disclosed to us, and we'd like

3     to have an opportunity to examine them in advance

4     as well as any other filings that they make.

5          THE COURT:   I don't think that we can do

6     that in the time allotted to us.  If at the time

7     of the evidentiary hearing after these witnesses

8     have testified, if you think you need more time, I

9     will give you more time.  We'll take as much time

10    as we need to get to the bottom of this and get to

11    the facts.  But again, my concern is that this is

12    all going to be academic.

13          MR. STRACHMAN:   Because the concern that I

14    have, Judge, is that we face conflicting rules

15    over these very same accounts, identical accounts

16    that as your Honor indicated are really not

Page 30

6-16-05 Hearing

17    subject to the Court.  They're really in another
18    jurisdiction.  And I'm also concerned that we'll
19    be in a situation where we have the plaintiffs
20    here, the PMA trying to effectively disrupt the
21    proceedings that were already in place in New York
22    on basically one foot and having people come in
23    here without discovery, without advanced
24    knowledge, without information having to litigate
25    where the remaining it's about $13,000,000 that's

37

1    being held in these 57 accounts, where that money
2    is and who owns it in advance of what was already
3    started in New York.
4         So they've had -- if we go forward here,
5    they will be given the opportunity to disrupt that
6    after the Court has already indicated we should be
7    in these foreign states and without the benefit of
8    discovery, without the benefit of all the tools of
9    litigation that my client should be afforded.  I
10    think that's a problem with your Honor's attempt
11    to accommodate this motion with a hearing.
12         THE COURT:  Well, it may be a problem, but
13    it's one that we'll have to work through.  Maybe
14    this whole problem will be solved if you file a
15    motion to dismiss.  I may dismiss the case before
16    I have a hearing.
17         MR. STRACHMAN:  I ask then that you enter
18    a schedule for that, Judge, so that we have some
19    sort of structure as to when the motions are filed
20    and response and reply.
21         THE COURT:  We have our rules that apply.

Page 31

6-16-05 Hearing

22     And what I'm going to do is schedule this for an
23     evidentiary hearing on the plaintiff's motion for
24     a preliminary injunction.  And I'm going to
25     schedule it for Thursday, July 14, 2005 at 2:00

                                                    38

1      p.m. for an evidentiary hearing.  And the case
2      will take its course.  I'm not entering any other
3      orders at this time.
4               MR. KALBIAN:  With respect to planning,
5      Judge, for that hearing, if we file a motion and
6      have a motion --
7               THE COURT:  If you file a motion to
8      dismiss, I will hear it before the hearing.  And I
9      if I decide to grant it, then that will be the end
10     of the matter.
11              MR. STRACHMAN:  So just so I understand,
12     you're saying in advance of the 14th or on the
13     14th?
14              THE COURT:  On the 14th.
15              MR. KALBIAN:  Your Honor, obviously we'd
16     want enough time to file any opposition briefs.
17              THE COURT:  Certainly.
18              MR. KALBIAN:  To the extent Mr. Strachman
19     files his papers on the 10th of July, obviously we
20     would need time to respond.
21              THE COURT:  Do you plan to file a motion
22     to dismiss?
23              MR. STRACHMAN:  We do, Judge.
24              THE COURT:  When do you want to file it?
25              MR. STRACHMAN:  I'd like to file it I

                                                    39

6-16-05 Hearing

1      guess on Monday or Tuesday, Judge.

2          THE COURT:  This Monday or Tuesday?

3          MR. STRACHMAN:  Yes.

4          THE COURT:  All right.  What have we got

5      for a date here.  I'll give you until Tuesday, the

6      21st.  You'll have until June 21 to file a motion

7      to dismiss.  How much time do you want to answer?

8          MR. KALBIAN:  We could put our papers in

9      on or before the 30th of June.

10         THE COURT:  All right.  Any objection?

11         MR. STRACHMAN:  No, Judge.

12         THE COURT:  Memoranda will be filed by

13     June 30.  And when I get back on July 6th, I'll

14     look over the papers, and maybe I could set that

15     down for hearing separately.

16         MR. STRACHMAN:  I think that will helpful,

17     Judge, in terms of possibly bringing people in.

18         THE COURT:  I just have limited time

19     available to me right now, because I'm going to be

20     away for two weeks, and then I'm coming back for

21     one day to supposedly impanel a criminal jury.

22     And then I was planning to have that criminal jury

23     trial during that week of July 11th, but I'm not

24     certain that trial will go forward at that time,

25     and that's why other things have been scheduled.

                                                    40

1          Following that week, I'm away for the rest

2      of the summer.  I'm not back here until after

3      Labor Day.  I'm a senior judge now.  I can take as

4      much time as I want.

5          MR. STRACHMAN:  It's deserved.  Thank you.

6-16-05 Hearing

6          THE COURT:  It's one of the advantages of
7     being a senior judge.  When you're working for
8     nothing, you can take time off.
9          MR. STRACHMAN:  Thank you, your Honor.
10          THE COURT:  All right.  Are we all on the
11     same track now?
12          MR. KALBIAN:  Yes, your Honor.
13          THE COURT:  Got all those dates?
14          MR. KALBIAN:  Yes.
15          MR. STRACHMAN:  Thank you.
16          MR. KALBIAN:  Thank you.
17          THE COURT:  All right.
18          (Court concluded at 3:00 p.m.)
19
20
21
22
23
24
25

C E R T I F I C A T I O N

          I, Anne M. Clayton, RPR, do hereby

     certify that the foregoing pages are a true and

6-16-05 Hearing

accurate transcription of my stenographic notes in
the above-entitled case.

Anne M. Clayton, RPR

_____
Date