UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LESLYE KNOX, individually and as natural
guardian of plaintiffs Jordan Terrell Ellis,
Reuven Carter, Shanon Carter, Shayrah Carter,
Yoshavyah Carter and Amitai Carter,
JORDAN TERRELL ELLIS, minor,
REUVEN CARTER, minor,                                    Civ. No. 07-CV-03349 (VM)
SHANON CARTER, minor,
SHAYRAH CARTER, minor,
YOSHAVYAH CARTER, minor,                          **COUNTERCLAIM**
AMITAI CARTER, minor,                                     **COMPLAINT**
by their next friend and guardian, Leslye Knox,
and TSAPHRIRAH ELLIS,

            Plaintiffs – Judgment Creditors,

      -against-

THE BANK OF NEW YORK,

         Defendant – Garnishee,

      -and-


PALESTINE MONETARY AUTHORITY,

         Intervenor – Counterclaim Defendant.

-------------------------------------------------------------------X


      Plaintiffs/Judgment Creditors, by their attorneys, JAROSLAWICZ &
JAROS, complain of the Intervenor/Counterclaim Defendant and allege for their
counterclaim complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1.     Plaintiffs/Judgment Creditors hold a final judgment totaling $127,500,000.00 entered by this Court against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") on August 1, 2006.

2.     The PA and PLO have not honored the judgments, pursuant to their policy of refusal to recognize the authority of the courts of the United States.

3.     The Intervenor/Counterclaim Defendant PALESTINE MONETARY AUTHORITY ("PMA") is a constituent department of and legally identical with judgment debtor PA.

4.     Plaintiffs/Judgment Creditors therefore bring this action for a declaratory judgment establishing that the PMA is legally identical with the PA and thus liable for Plaintiffs/Judgment Creditors' judgment against the PA, and for an order and judgment pursuant to CPLR 5225(a) directing the PMA to turnover and deliver to Plaintiffs/Judgment Creditors money and property sufficient to satisfy their judgment.

5.     The PMA is also indebted to the PA and holds assets and property of the PA. Additionally, the PA fraudulently conveyed assets to the PMA subsequent to entry of Plaintiffs/Judgment Creditors' judgment against the PA.

6.     Therefore, this action also seeks a judgment and order (a) directing the PMA to turnover and pay to Plaintiffs/Judgment Creditors all debts owed by the PMA to the PA and all assets and property of the PA in the possession or custody of the PMA and (b) setting aside the PA's fraudulent conveyances to the PMA and directing

the PMA to deliver the assets fraudulently conveyed to the Plaintiffs/Judgment Creditors.

## JURISDICTION

7.     This Court has subject-matter jurisdiction over this action pursuant to the Court's ancillary jurisdiction.

8.     This Court has jurisdiction over the PMA because the PMA has intervened in this action, and because it does extensive and continuous business in the State of New York.

## THE PARTIES

9.     Plaintiff/Judgment Creditor LESLYE KNOX, who brings this action individually and as natural guardian of plaintiffs/judgment creditors Jordan Terrell Ellis, Reuven Carter, Shanon Carter, Shayrah Carter, Yoshavyah Carter and Amitai Carter, holds a judgment against the PA and the PLO in the amount of $30,000,000.00.

10.     Plaintiffs/Judgment Creditors JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER, minors, who bring this action through their mother and legal guardian Leslye Knox, each hold a judgment against the PA and the PLO in the amount of $15,000,000.00.

11.     Plaintiff/Judgment Creditor TSAPHRIRAH ELLIS holds a judgment against the PA and the PLO in the amount of $7,500,000.00.

12.     Intervenor/Counterclaim Defendant PMA is a constituent department of the PA and carries out certain of the PA's governmental functions relating to regulation of banking.

## STATEMENT OF FACTS

### a.     Background

13.     Plaintiffs/Judgment Creditors are the widow, children and sister of Aharon Ellis, an American citizen who was murdered in a terrorist machine-gun attack carried out by the PA and PLO at a Bat Mitzvah celebration on January 17, 2002, in Hadera, Israel.

14.     Senior operatives and officials of the PA and PLO were convicted of the murder of Aharon Ellis by the courts of the State of Israel.

15.     The liability of the PA and PLO for the murder of Mr. Ellis cannot be and has never been contested.

16.     The instant Plaintiffs/Judgment Creditors (along with the estate, parents and other siblings of Aharon Ellis) filed suit in this Court in 2003 against the PA and PLO under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq. Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM).

17.     On July 11, 2006, this Court gave a Decision and Order directing entry of final judgment against the PA and PLO and in favor of all the plaintiffs, in the total amount of $192,740,660.13 in damages. *Knox v. Palestine Liberation Organization*, 442

F.Supp.2d 62 (S.D.N.Y. 2006). Final judgment was entered in accordance with that Decision and Order on August 1, 2006 (the "Judgment").

18.    The PA and PLO appealed the Judgment to the Court of Appeals for the Second Circuit but failed to file an appellate brief, and the appeal was therefore dismissed. *See Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM), dkt. #91.

19.    The PA and PLO have refused to satisfy the Judgment because, as they have brazenly informed this Court, they do not recognize the authority of the courts of the United States. On July 15, 2005, this Court ordered the PA and PLO to pay sanctions in the amount of some $19,000 previously imposed upon them by this Court in the underlying action, and to answer the complaint, by no later than August 15, 2005. In response to that order, the PLO and PA sent a letter to this Court on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Letter from Ramsey Clark, Esq. to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, No. 03 Civ. 4466(VM).

**b.    The PMA Is Legally Identical with Judgment Debtor PA**

20.    The PA is a non-sovereign municipal governmental entity.

21.    Like many governmental entities, the PA is comprised of various constituent departments and divisions.

22.    These constituent departments and divisions of the PA are integral parts of the PA itself, and are legally indistinguishable from the PA itself.

23.    The PMA is one such constituent department and/or division of the PA.

24.    The PMA is an integral part of the PA itself.

25.    The PMA is legally indistinguishable from the PA itself.

26.    Because the PMA is legally indistinguishable from the PA itself, the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA.

27.    Because the PMA is legally indistinguishable from the PA, the Court need not find that the PMA is an alter ego of the PA in order to determine that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA.

28.    Because the PMA is legally indistinguishable from the PA, the Court need not pierce PMA's corporate veil, in order to determine that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA. Indeed, there is no corporate veil separating the PA and the PMA that needs to be pierced.

**c.    The PMA Holds Assets Subject to Turnover to the Plaintiffs/Judgment Creditors**

29.    The PMA holds the reserve assets of the PA, which include the PA's gold, currency and other assets, promissory notes, bonds, and other notes and negotiable securities.

30. The PMA is the sole depository and manager of the PA's foreign currency and gold reserves. The PA has no currency of its own, and all its currency reserves are foreign currency reserves. Thus, the PMA is the PA's "piggy bank".

31. The PMA owes debts titled to the PA.

32. Additionally, the PMA has in its possession and/or custody money and property which is titled in the name of the PMA itself.

33. All the above-described assets and debts are subject to turnover to the Plaintiffs/Judgment Creditors in satisfaction of their judgment against the PA.

34. Alternatively, if the Court finds that the PMA is legally distinguishable from the PA, all the above-described assets and debts held and/or owed by the PMA, except those assets owned solely by the PMA itself, are subject to turnover to the Plaintiffs/Judgment Creditors in satisfaction of their judgment against the PA.

### d.    Fraudulent Conveyance

35. Article 12 of the PA's "Monetary Authority Law" provides that at the end of each year the PMA is required to transfer its annual net profits to the PA.

36. Article 13 of the Monetary Authority Law provides that the PA may waive and relinquish its right to receive the PMA's annual profits.

37. Upon information and belief, in late 2006 or early 2007 the PA waived and relinquished its right to receive the sum of the PMA's net annual profits for 2006, pursuant to Article 13 of the Monetary Authority Law.

38. Section 270 of the New York Debtor and Creditor Law ("D.C.L.") defines the term conveyance as including "every payment of money, assignment, release [or] transfer … of tangible or intangible property…" (emphasis added).

39.     The PA's waiver and relinquishment of its right to receive the sum of the PMA's annual profits for 2006 pursuant to Article 13 of the Monetary Authority Law constituted a conveyance of that sum to the PMA within the meaning of D.C.L. 270.

40.     The PA's conveyance of the PMA's 2006 annual profits to the PMA was made without fair consideration, as that term is defined in § 272 of the D.C.L., because no property was conveyed or antecedent debt satisfied in exchange for the PMA's profits, as a fair equivalent therefor, nor were the PMA's profits received to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the PMA's profits.

41.     The PA's conveyance of the PMA's 2006 annual profits to the PMA was made without fair consideration, as that term is defined in D.C.L. § 272, for the further reason that those profits were neither conveyed by the PA nor received by the PMA in "good faith", within the meaning of D.C.L. § 272, since the PMA and PA (a) are (even if not legally identical) closely related entities (b) knew of the PA's judgment debt to the Plaintiffs/Judgment Creditors and its refusal to honor that judgment (c) by executing that conveyance, failed to deal honestly, fairly and openly (d) executed that conveyance without an honest belief in the propriety thereof (e) executed that conveyance with an intent to take unconscionable advantage of the Plaintiffs/Judgment Creditors, and (f) executed that conveyance with knowledge of the fact that the conveyance would hinder, delay, and/or defraud the Plaintiffs/Judgment Creditors, and with the intent of causing such hindrance, delay and fraud.

42.     At the time that the PA conveyed the sum of the PMA's 2006 annual profits to the PMA without fair consideration, a final judgment in an action for

money damages in favor of the Plaintiffs/Judgment Creditors had been docketed in this Court against the PA, and the PA had (and still has) failed to satisfy that judgment, and that conveyance is therefore fraudulent as to the Plaintiffs/Judgment Creditors pursuant to D.C.L. § 273-a.

43.     Additionally, the conveyance of the PMA's 2006 profits was made by the PMA and PA with the intent of hindering, delaying and defrauding the Plaintiffs/Judgment Creditors, and is therefore fraudulent as to the Plaintiffs/Judgment Creditors under D.C.L. § 276.

**<u>FIRST CLAIM FOR RELIEF</u>**

**<u>DECLARATORY JUDGMENT</u>**

44.     Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

45.     Plaintiffs/Judgment Creditors are judgment creditors of the PA.

46.     The PMA is legally identical with the PA.

47.     The PMA is therefore liable for Plaintiffs/Judgment Creditors' judgment against the PA.

48.     Plaintiffs/Judgment Creditors judgment may therefore be enforced against assets titled to the PMA.

49.     Entry of a judgment declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against assets

titled to the PMA would substantially assist the Plaintiffs/Judgment Creditors to enforce their judgment, both within the context of this action and otherwise.

50.    Plaintiffs/Judgment Creditors are therefore entitled to a judgment declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against assets titled to the PMA.

## SECOND CLAIM FOR RELIEF

## TURNOVER PURSUANT TO CPLR § 5225(a)

51.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

52.    The PMA is legally indistinguishable from judgment debtor PA.

53.    The PMA is in possession and custody of money and personal property in which the PA and the PMA (which are legally indistinguishable) have an interest.

54.    Section 5225(a) of New York State Civil Practice Law and Rules ("CPLR") empowers this Court to order the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and the PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and PMA have an interest.

55.     Plaintiffs/Judgment Creditors are therefore entitled to an order and judgment pursuant to CPLR § 5225(a) directing the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and the PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and the PMA have an interest.

## THIRD CLAIM FOR RELIEF

## TURNOVER PURSUANT TO CPLR §§ 5225(b) and 5227

56.     Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

57.     The PMA owes debts titled to the PA and is in possession and custody of money and other property titled to the owned by the PA.

58.     Sections 5225(b) and 5227 of the CPLR empower this Court to order the PMA (in the event that it is found to be legally distinguishable from the PA and therefore not subject to § 5225(a)[1]) to turnover and pay to the Plaintiffs/Judgment Creditors all debts owed by the PMA to the PA and all money owned by the PA in the

---

[1]     If the PMA is found to be identical with the PA then it is subject to § 5225(a), as set forth in the Second Claim for Relief, and the relief sought in this Third Claim for Relief would thus be available under § 5225(a). This Third Claim for Relief is therefore made in the alternative to the Second Claim for Relief.

possession or custody of the PMA and, if the sums owed and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA.

59.    Therefore, if the Court determines that the PMA and PA are not legally identical (and that the PMA is therefore not subject to § 5225(a)), Plaintiffs/Judgment Creditors are entitled to an order and judgment pursuant to CPLR §§ 5225(b) and 5227 directing the PMA to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA, all debts owed by the PMA to the PA and all money owned by the PA in the possession or custody of the PMA and, if the sums owed and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA.

### FOURTH CLAIM FOR RELIEF

### FRAUDULENT CONVEYANCE

60.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

61.    The PA fraudulently conveyed the sum of its 2006 annual profits to the PMA.[2]

---

[2]    A legal entity cannot make a conveyance to itself. Therefore, this Fourth Claim for Relief is asserted in the alternative, in the event that the Court determines that the PA and PMA are not legally identical. If the PMA is found to be identical with the PA, then § 5225(a) would apply, as set forth in the Second Claim for Relief.

62.     Therefore, Plaintiffs/Judgment Creditors are entitled to a judgment and order against the PMA, pursuant to D.C.L. § 278, setting aside and annulling the conveyance to the PMA by the PA of the PMA's 2006 annual profits, directing the PMA to deliver the amount of those profits to the Plaintiffs/Judgment Creditors, and entering a money judgment against the PMA and in favor of the Plaintiffs/Judgment Creditors for the amount of those profits, up to the full amount of their judgment against the PA.

**WHEREFORE**, the Plaintiffs/Judgment Creditors demand an order and judgment against Intervenor/Counterclaim Defendant PMA:

(i)     Declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against any assets titled to the PMA;

(ii)     Pursuant to § CPLR 5225(a) directing the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and PMA have an interest;

(iii)     Pursuant to CPLR §§ 5225(b) and 5227 directing the PMA to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA, all debts owed by the PMA to the PA and all money owned by the PA in the possession or custody of the PMA and, if the sums owed

and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA;

(iv)    Pursuant to D.C.L. § 278, setting aside and annulling the conveyance to the PMA by the PA of the PMA's 2006 annual profits, directing the PMA to deliver the amount of those profits to the Plaintiffs/Judgment Creditors, and entering a money judgment against the PMA and in favor of the Plaintiffs/Judgment Creditors for the amount of those profits, up to the full amount of their judgment; and

(v)    Awarding Plaintiffs/Judgment Creditors their costs, expenses, disbursements and attorney's fees in connection with this proceeding, together with such other and further relief that this Court deems just, proper and equitable.

Dated: New York, New York
        June 21, 2007

                                Yours,

                                JAROSLAWICZ & JAROS, LLC.
                                *Attorneys for the*
                                *Plaintiffs/Judgment Creditors*

                                by: _____
                                     Robert J. Tolchin

                                225 Broadway, 24th floor
                                New York, New York 10007
                                (212) 227-2780

David Strachman, Esq.
MCINTYRE, TATE & LYNCH, LLP
*Attorneys for the*
*Plaintiffs/Judgment Creditors*
321 South Main Street, Suite 400
Providence, Rhode Island 02903
(401) 351-7700