UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

LESLYE KNOX, individually and as natural
guardian of plaintiffs Jordan Terrell Ellis,
Reuven Carter, Shanon Carter, Shayrah Carter,
Yoshavyah Carter and Amitai Carter,
JORDAN TERRELL ELLIS, minor,
REUVEN CARTER, minor,
SHANON CARTER, minor,
SHAYRAH CARTER, minor,
YOSHAVYAH CARTER, minor,
AMITAI CARTER, minor,
by their next friend and guardian, Leslye Knox,
and TSAPHRIRAH ELLIS,

        Plaintiffs – Judgment Creditors,

   -against-

THE BANK OF NEW YORK,

        Defendant-Garnishee.

--------------------------------------------------------------- X

**07 CV 3349**
Civ. No.

**COMPLAINT**

Plaintiffs/Judgment Creditors, complaining of the Defendant/Garnishee,
by their attorneys, JAROSLAWICZ & JAROS, allege for their complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

1.     Plaintiffs/Judgment Creditors hold final judgments totaling
$127,500,000.00 entered by this Court against the Palestinian Authority ("PA") and the
Palestine Liberation Organization ("PLO") on August 1, 2006.

2.      The PA and PLO have not honored the judgments, pursuant to their policy of refusal to recognize the authority of the courts of the United States.

3.      Defendant/Garnishee THE BANK OF NEW YORK ("BNY") holds funds that are the property of judgment debtor PA, which are nominally titled to the Palestine Monetary Authority ("PMA").

4.      Plaintiffs/Judgment Creditors therefore bring this supplemental proceeding pursuant to CPLR §§ 5225 and 5227, for a judgment and order directing BNY to turnover and pay to Plaintiffs/Judgment Creditors all funds in the possession or custody of BNY that are titled to the PMA.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to the Court's ancillary enforcement jurisdiction and pursuant to 28 U.S.C. § 1332(a)(1), since plaintiffs LESLYE KNOX, JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER are domiciliaries and citizens of the State of Georgia, plaintiff TSAPHRIRAH ELLIS is a domiciliary and citizen of the State of Illinois, defendant BNY is a citizen of the State of New York and the amount in controversy exceeds $75,000.

6.      This Court has jurisdiction over BNY pursuant to Fed.R.Civ.P. 4(k)(1)(A).

7.      The Southern District of New York is the proper venue for this matter pursuant to 28 U.S.C. § 1391.

## THE PARTIES

8.      Plaintiff/Judgment Creditor LESLYE KNOX, who brings this action individually and as natural guardian of plaintiffs/judgment creditors Jordan Terrell Ellis, Reuven Carter, Shanon Carter, Shayrah Carter, Yoshavyah Carter and Amitai Carter, holds a judgment against the PA and the PLO in the amount of $30,000,000.00.

9.      Plaintiff/Judgment Creditor LESLYE KNOX is a domiciliary and citizen of the State of Georgia.

10.      Plaintiffs/Judgment Creditors JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER, minors, who bring this action through their mother and legal guardian Leslye Knox, each hold a judgment against the PA and the PLO in the amount of $15,000,000.00.

11.      Plaintiffs/Judgment Creditors JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER are domiciliaries and citizens of the State of Georgia.

12.      Plaintiff/Judgment Creditor TSAPHRIRAH ELLIS holds a judgment against the PA and the PLO in the amount of $7,500,000.00.

13.      Plaintiff/Judgment Creditor TSAPHRIRAH ELLIS is a domiciliary and citizen of the State of Illinois.

14.      Defendant/Garnishee BNY is a banking institution incorporated and headquartered in New York State.

15.     BNY's principal place of business is New York State.

16.     Under controlling New York law Plaintiffs/Judgment Creditors are not required to name the PMA as a party to this action (even assuming *arguendo* that the PMA was legally distinguishable from the PA, which it is not); rather, it is the duty of the garnishee (i.e. BNY) to implead potential adverse claimants (e.g. the PMA) and/or the duty of an adverse claimant (e.g. the PMA) to seek to intervene. *See e.g. Matter of Ruvolo v. Long Island Railroad Co.*, 45 Misc.2d 136, 145-147, 256 N.Y.S.2d 279, 288-290 (Sup.Ct.Queens Co. 1965); *RCA Corp. v. Tucker*, 696 F.Supp. 845, 850-851 (E.D.N.Y. 1988); *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999); *Neshewat v. Salem*, 365 F.Supp.2d 508, 524-525 (S.D.N.Y. 2005).

## STATEMENT OF FACTS

### a.     Background

17.     Plaintiffs/Judgment Creditors are the widow, children and sister of Aharon Ellis, an American citizen who was murdered in a terrorist machine-gun attack carried out by the PA and PLO at a Bat Mitzvah celebration on January 17, 2002, in Hadera, Israel.

18.     Senior operatives and officials of the PA and PLO were convicted of the murder of Aharon Ellis by the courts of the State of Israel.

19.     The liability of the PA and PLO for the murder of Mr. Ellis cannot be and has never been contested.

20.    The instant Plaintiffs/Judgment Creditors (along with the estate, parents and other siblings of Aharon Ellis) filed suit in this Court in 2003 against the PA and PLO under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq. Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM).

21.    On July 11, 2006, this Court gave a Decision and Order directing entry of final judgment against the PA and PLO and in favor of all the plaintiffs, in the total amount of $192,740,660.13 in damages. *Knox v. Palestine Liberation Organization*, 442 F.Supp.2d 62 (S.D.N.Y. 2006). Final judgment was entered in accordance with that Decision and Order on August 1, 2006 (the "Judgment").

22.    The PA and PLO appealed the Judgment to the Court of Appeals for the Second Circuit but failed to file an appellate brief, and the appeal was therefore dismissed. *See Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM), dkt. #91.

23.    The PA and PLO have refused to satisfy the Judgment because, as they have brazenly informed this Court, they do not recognize the authority of the courts of the United States. On July 15, 2005, this Court ordered the PA and PLO to pay sanctions in the amount of some $19,000 previously imposed upon them by this Court in the underlying action, and to answer the complaint, by no later than August 15, 2005. In response to that order, the PLO and PA sent a letter to this Court on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no

> jurisdiction over them and not to answer on the
> merits ...
>
> This same position, that the Court has no jurisdiction
> over them, applies to the order for defendants to pay
> sanctions.

Letter from Ramsey Clark, Esq. to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, No. 03 Civ. 4466(VM).

**b.    The Funds at Issue**

24.    BNY currently holds funds nominally titled to the Palestine Monetary Authority ("PMA") in the amount of approximately $20 million.

25.    In this proceeding, Plaintiffs/Judgment Creditors seek turnover of those funds.

**c.    The PMA Is a Mere Department and/or Division of Judgment Debtor PA**

26.    The PA is a non-sovereign municipal governmental entity.

27.    Like many governmental entities, the PA is comprised of various constituent departments and divisions.

28.    These constituent departments and divisions of the PA are integral parts of the PA itself, and are legally indistinguishable from the PA itself.

29.    The PMA is one such constituent department and/or division of the PA.

30.    The PMA is an integral part of the PA itself.

31.    The PMA is legally indistinguishable from the PA itself.

32.    Because the PMA is legally indistinguishable from the PA itself, the funds titled to the PMA held by BNY are assets of the PA subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

33.    Because the PMA is legally indistinguishable from the PA, the Court need not find that the PMA is an alter ego of the PA, in order to render the funds titled to the PMA held by BNY subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

34.    Because the PMA is legally indistinguishable from the PA, the Court need not pierce PMA's corporate veil, in order to render the funds titled to the PMA held by BNY subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA. Indeed, there is no corporate veil separating the PA and the PMA that needs to be pierced.

d.    **Alternatively, the PMA Is an Alter-Ego of the PA and/or Any Separate Corporate Form Enjoyed by the PMA Should be Disregarded**

35.    Alternatively, if the Court finds that the PMA has some corporate form distinguishable from that of the PA, that corporate form should be disregarded and/or the PMA should be found to be an alter ego of the PA.

36.    The PMA is undisputedly part of the PA's governmental apparatus and has no business of its own. The PMA's sole business is to perform the PA's governmental functions. Thus, the PMA is a mere proxy and organ, i.e. an *alter ego*, of the PA.

37.    Moreover, the PMA is extensively controlled and dominated by the PA, and so is a mere agent of the PA.

38.    According to the PA "Monetary Authority Law," which the PMA has represented to be the law governing its existence, the PA appoints and can remove all the directors of the PMA; the PA is ultimately answerable for the debts of the PMA; the PA is entitled to receive the profits of the PMA; the PA sets the policies of the PMA; the PA decreed the existence of the PMA and has sole power to terminate the existence of the PMA; and the PMA is the agent of the PA.

39.    The PA "Monetary Authority Law" also provides that the PMA holds "the international reserves" of the PA and defines the term "international reserves" as including gold or currency or any other assets, promissory notes, and government bonds, and other notes and negotiable securities.

40.    The PMA was capitalized by the PA without consideration.

41.    The PMA has also cited and identified the Oslo Accords (an agreement between Israel and the PLO, creating the PA) as the constituent instrument of the PMA.

42.    The Economic Protocol of the Oslo Accords provides that the PMA will exist to act as the PA's official economic and financial advisor and to act as the PA's "sole financial agent, locally and internationally."

43.    The Economic Protocol of the Oslo Accords also provides that the PMA is the sole depository and manager of the PA's foreign currency and gold reserves. The PA has no currency of its own, and all its currency reserves are foreign currency reserves. Thus, bluntly stated, the PMA is the PA's "piggy bank."

44.    The PMA itself recognizes no distinctions between the PMA and the PA; for example, PA letterhead is used in the ordinary course of business by the PMA.

45.    Furthermore, recognizing any separate existence claimed by the PMA would work a profound injustice, be contrary to public policy and defeat an important legislative purpose because it would prevent Plaintiffs/Judgment Creditors from enforcing their judgment and thereby (a) prevent Plaintiffs/Judgment Creditors from receiving the compensation awarded them for the terrorist murder of their decedent and (b) thwart Congress' purpose in enacting § 2333 of the ATA, which is to deter future terrorist attacks against American citizens. Moreover, since the PA is ultimately answerable for the debts of the PMA and entitled to the profits of the PMA, the paying party would thus in any case be the PA.

46.    Therefore, alternatively, if the PMA is found to have some corporate form distinguishable from that of the PA, that corporate form should be disregarded and/or the PMA should be found to be an alter ego of the PA, and the funds titled to the PMA held by BNY should be turned over to Plaintiffs/Judgment Creditors in satisfaction of their judgment.

e.    **The Decision of the New York State Court Regarding These Funds Was Erroneous**

47.    The funds at issue were the subject of a decision of the New York Supreme Court in *Palestine Monetary Authority v. Strachman*, 2007 WL 1063867 (N.Y.Sup. 2007).

48.    In *Palestine Monetary Authority*, the court held that the question of whether the PMA is legally identical with the PA is non-justiciable, because in a license issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury, the PMA is referred to as an "independent agenc[y]" of the PA. *See Palestine Monetary Authority*, 2007 WL 1063867 at *2, 4-5.

49.    This decision is, respectfully, erroneous, for the reasons set forth below, *inter alia*:

50.    The question of whether a foreign governmental body is legally separate from its central government for purposes of enforcement of a judgment is the exclusive prerogative of the Judiciary, not the Executive Branch. While the Executive Branch may file a statement of interest expressing its position (which it did <u>not</u> do in *Palestine Monetary Authority*), the position of the Executive is never dispositive, and the courts are not only free, but required, to adjudicate the status of the foreign entity using <u>legal</u> standards, irrespective of the position of the Executive.

51.    Moreover, by referring to the PMA as an "independent agenc[y]" OFAC <u>did not even purport</u> to make any determination whatsoever about the legal status of the PMA. Rather, OFAC organized the license into groups, using the familiar categories of executive, judiciary, legislature, and the catch-all of category of "independent agencies." The purpose of the license is to name those parts of the PA government that are not controlled by Hamas personnel. The division into categories is completely incidental to the license, and in no way constitutes a "finding" or "determination." OFAC could just as easily have listed the entities alphabetically.

52.    Furthermore, the OFAC license does not refer to the PMA as a <u>separate</u> legal entity, only as an "independent agenc[y]." The statement about "independence" is meaningless here, where the question is whether the PMA is a <u>separate</u> legal entity. The FBI is part and parcel of the Executive Branch, part of the legal entity known as the United States of America, yet it is an "independent agency," though it is not legally separate.

53.    Additionally, the interpretation of the OFAC license adopted in *Palestine Monetary Authority* is erroneous because it ignores clear statements by OFAC that the PMA is legally identical with the PA, as discussed in the next section.

**f.    Alternatively, the Executive Branch Has Determined That the PMA Is Legally Identical With the PA**

54.    Alternatively, if the Court finds that any determination by OFAC of the PMA's legal status is dispositive and/or renders the question of the PMA's status non-justiciable, then Plaintiffs/Judgment Creditors must prevail in this action because (contrary to holding in *Palestine Monetary Authority*) the fact is that OFAC has determined that the PA and PMA are legally identical, as explained below.

55.    The "Guidelines on Transactions with the Palestinian Authority" published by OFAC state that:

> OFAC sanctions against the Palestinian Authority affect *only transactions by U.S. persons with the Palestinian Authority.* Therefore, these sanctions generally <u>do not</u> prohibit U.S. persons from providing assistance to, or engaging in business dealings with, private individuals, corporations, or organizations in the West Bank or Gaza.
>
> <u>General Licenses</u>: On April 12, 2006, OFAC issued 6 general licenses, available on OFAC's website and published in the *Federal Register* (71 *Fed. Reg.* 27199, May 10, 2006), authorizing U.S. persons to engage in certain transactions *with the Palestinian Authority.*

Office of Foreign Assets Control publication, *Guidelines on Transactions with the Palestinian Authority,* issued on July 17, 2006, and published by OFAC at www.treas.gov/offices/enforcement/ofac/programs/terror/ns/pal_guide.pdf

(emphasis by italics added).

56.    Thus, the OFAC license at issue "authorize[es] U.S. persons to engage in certain transactions <u>with the Palestinian Authority</u>" and that license is necessary only because "OFAC sanctions against the Palestinian Authority affect only transactions by U.S. persons <u>with the Palestinian Authority</u>."

57.    Therefore, the PMA was included in the OFAC license precisely and only because OFAC has determined that transactions with the PMA constitute transactions with the Palestinian Authority.

58.    Furthermore, OFAC has explained that the license is a "'White List' of <u>parts of the Palestinian Authority</u> that U.S. persons can deal with" and that "Dealings with any <u>part of the Palestinian Authority</u> not listed in the General License require a specific license from OFAC." *See OFAC Guide to Dealing with the Palestinian Authority*, published by OFAC at <u>www.treas.gov/offices/enforcement/ofac/programs</u> <u>/terror/pa.shtml</u> (emphasis added).

59.    Thus, OFAC has determined that the PMA is a "part of the Palestinian Authority." *Id.*

60.    Accordingly, if the Court finds that OFAC's determination of the status of the PMA is dispositive and binding on this Court, then Plaintiffs/Judgment Creditors are entitled to turnover of the funds at issue on the basis of OFAC's determination that the PA and PMA are legally identical.

## CLAIM FOR RELIEF

### TURNOVER PURSUANT TO CPLR §§ 5225 / 5227

61.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

62.    Plaintiffs/Judgment Creditors are judgment-creditors of the PA.

63.    Defendant/Garnishee BNY holds funds nominally titled to the PMA that are subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

64.    Plaintiffs/Judgment Creditors are therefore entitled to an order and judgment pursuant to New York State Civil Practice Law and Rules §§ 5225 and 5227 directing Defendant/Garnishee BNY to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA, all funds held by BNY nominally titled to the PMA.

**WHEREFORE**, the Plaintiffs/Judgment Creditors demand an order and judgment against Defendant/Garnishee BNY:

(i) Ordering BNY to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA and the statutory interest thereon, all funds held by Defendant BNY titled to the PMA;

(ii) Awarding Plaintiffs/Judgment Creditors their costs, expenses, disbursements and attorney's fees in connection with this proceeding,

together with such other and further relief that this Court deems just, proper

and equitable.


Dated: New York, New York
       April 25, 2007

                       Yours,

                       JAROSLAWICZ & JAROS, ESQS.
                       *Attorneys for the*
                       *Plaintiffs/Judgment Creditors*

                       by: _____
                       Robert J. Tolchin (RT3713)

                       150 William Street, 19th Floor
                       New York, New York 10038
                       (212) 227-2780

                       David Strachman, Esq.
                       MCINTYRE, TATE & LYNCH, LLP
                       *Attorneys for the*
                       *Plaintiffs/Judgment Creditors*
                       321 South Main Street, Suite 400
                       Providence, Rhode Island 02903
                       (401) 351-7700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LESLYE KNOX, individually and as natural guardian
and as natural guardian of plaintiffs Jordan Terrell Ellis,
Reuven Carter, Shanon Carter, Shayrah Carter,      Case No. 02 CV 3349
Yoshavyah Carter and Amitai Carter,
Jordan Terrell Ellis, minor,                        **AFFIDAVIT**
REUVEN CARTER, minor                                **OF SERVICE**
SHANON CARTER, minor,
SHAYRAH CARTER, minor,
YOSHAVYAH CARTER, minor
AMITAI CARTER, minor,
by their next friend and guardian, Leslye Knox,
and TSAPHRIRAH ELLIS,

                    Plaintiffs — Judgment Creditors,

        -against-

THE BANK OF NEW YORK,

                Defendant-Garnishee.
-------------------------------------------------------------------x

STATE OF NEW YORK , COUNTY OF NEW YORK        ss.:

The undersigned being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides at New York, New York

That on the 27th day of April, 2007 deponent served the within:

### SUMMONS AND COMPLAINT

upon the following, at the address(es) designated by said attorney(s) for that purpose by delivering a true copy thereof personally:

KENNETH BIALO, ESQ. (attorney for Bank of New York who agreed to accept service)
Attorney for Defendants
Emmet, Marvin & Martin, LLP
120 Broadway
New York, New York 10271

                                        Sean Alexander

Sworn to before me this
27th day of April, 2007

_____
Notary Public

                    INES FLORES
        Notary Public, State of New York
                No. 01FL1256260
            Qualified in Bronx County
        Commission Expires April 30, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

LESLYE KNOX, individually and as natural guardian
and as natural guardian of plaintiffs Jordan Terrell Ellis,
Reuven Carter, Shanon Carter, Shayrah Carter,
Yoshavyah Carter and Amitai Carter,
Jordan Terrell Ellis, minor
REUVEN CARTER, minor
SHANON CARTER, minor,
SHAYRAH CARTER, minor,
YOSHAVYAH CARTER, minor
AMITAI CARTER, minor,
by their next friend and guardian, Leslye Knox
and TSAPHRIRAH ELLIS,

Case No. 07 CV 3349

**AFFIDAVIT
OF SERVICE**

Plaintiff – Judgment Creditors,

-against-

THE BANK OF NEW YORK,

Defendant -Garnishee.

-------------------------------------------------------------------x

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

Eileen Goldsmith, being duly sworn, deposes and says:

That she is over eighteen years of age, is not a party to this action; and is employed
by the attorney for the plaintiff(s) herein.  That on May 10, 2007 she served the within:

**SUMMONS AND COMPLAINT**

upon the following, at the address(es) designated by said attorney(s) for that purpose by
depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an

official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

TO:

The Palestine Liberation Organization
Palestinian Authority
The Muqata'a
Al-Isral Street
Ramallah, Israel
(Registered Mail No. RE075192542US)

The Palestinian Authority
1320 18th Street, NW, Suite 200
Washington, D.C.  20036
(Certified Mail, Return Receipt Requested No. 7006 0810 0005 44460 0904)

_EILEEN GOLDSMITH_

Sworn to before me this
May 10, 2007

Notary Public

ROCHELLE MEYER
Notary Public, State of New York
No. 4805065
Qualified in Rockland County
Commission Expires October 31, 20 10