UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LESLYE KNOX, individually and as natural
guardian of plaintiffs Jordan Terrell Ellis,
Reuven Carter, Shanon Carter, Shayrah Carter,
Yoshavyah Carter and Amitai Carter,
JORDAN TERRELL ELLIS, minor,
REUVEN CARTER, minor,                                    Civ. No. 07-CV-03349 (VM)
SHANON CARTER, minor,
SHAYRAH CARTER, minor,
YOSHAVYAH CARTER, minor,                                 **FIRST AMENDED**
AMITAI CARTER, minor,                                    **COMPLAINT**
by their next friend and guardian, Leslye Knox,
and TSAPHRIRAH ELLIS,

              Plaintiffs – Judgment Creditors,

        -against-

THE BANK OF NEW YORK,

              Defendant – Garnishee,

        -and-

PALESTINE MONETARY AUTHORITY,

              Defendant - Intervenor

-------------------------------------------------------------------X

Plaintiffs/Judgment Creditors, by their attorneys, JAROSLAWICZ & JAROS, LLC complain of the Defendant/Garnishee and the Defendant/Intervenor, and allege for their First Amended Complaint[1] as follows:

### NATURE OF PROCEEDING AND RELIEF REQUESTED

1.      Plaintiffs/Judgment Creditors hold final judgments totaling $127,500,000.00 entered by this Court against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") on August 1, 2006.

2.      The PA and PLO have not honored the judgments, pursuant to their policy of refusal to recognize the authority of the courts of the United States.

3.      The Defendant/Garnishee THE BANK OF NEW YORK ("BNY") holds funds that are the property of judgment debtor PA, which are nominally titled to Defendant/Intervenor PALESTINE MONETARY AUTHORITY ("PMA").

4.      Plaintiffs/Judgment Creditors therefore bring this supplemental proceeding pursuant to CPLR §§ 5225 and 5227, for a judgment and order directing

---

[1]      Plaintiffs are amending the complaint at his time for two reasons. First, as discussed *infra*, the OFAC license upon which the decision in *Palestine Monetary Authority v. Strachman*, 2007 WL 1063867 (N.Y. Sup. 2007) was based became ineffective on June 20, 2007. Second, Defendant/Intervenor PMA has moved to strike Plaintiffs' Counterclaim Complaint against the PMA as procedurally improper. Though Plaintiffs intend to demonstrate in their response to the PMA's motion to strike that the Counterclaim Complaint is procedurally sound, out of an abundance of caution they have adopted into this First Amended Complaint the claims asserted against the PMA in the Counterclaim Complaint. If the Court determines that the Counterclaim

*(continued...)*

BNY to turnover and pay to Plaintiffs/Judgment Creditors all funds in the possession or custody of BNY that are titled to the PMA.

5.    Defendant/Intervenor PMA is a constituent department of and legally identical with judgment debtor PA.

6.    Plaintiffs/Judgment Creditors therefore seek a declaratory judgment establishing that the PMA is legally identical with the PA and thus liable for Plaintiffs/Judgment Creditors' judgment against the PA, and for an order and judgment pursuant to CPLR 5225(a) directing the PMA to turnover and deliver to Plaintiffs/Judgment Creditors money and property sufficient to satisfy their judgment.

7.    The PMA is also indebted to the PA and holds assets and property of the PA. Additionally, the PA fraudulently conveyed assets to the PMA subsequent to entry of Plaintiffs/Judgment Creditors' judgment against the PA.

8.    Therefore, this action also seeks a judgment and order (a) directing the PMA to turnover and pay to Plaintiffs/Judgment Creditors all debts owed by the PMA to the PA and all assets and property of the PA in the possession or custody of the PMA and (b) setting aside the PA's fraudulent conveyances to the PMA and directing the PMA to deliver the assets fraudulently conveyed to the Plaintiffs/Judgment Creditors.

## JURISDICTION AND VENUE

---

Complaint is procedurally defective, Plaintiffs will proceed on their (identical) claims against the PMA set out in this First Amended Complaint.

9.      This Court has subject-matter jurisdiction over the claims against BNY pursuant to the Court's ancillary enforcement jurisdiction and pursuant to 28 U.S.C. § 1332(a)(1), since plaintiffs LESLYE KNOX, JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER are domiciliaries and citizens of the State of Georgia, plaintiff TSAPHRIRAH ELLIS is a domiciliary and citizen of the State of Illinois, defendant BNY is a citizen of the State of New York and the amount in controversy exceeds $75,000.

10.     This Court has jurisdiction over BNY pursuant to FED. R. CIV. P. 4(k)(1)(A).

11.     This Court has subject-matter jurisdiction over the claims against the PMA pursuant to the Court's ancillary jurisdiction.

12.     This Court has jurisdiction over the PMA because the PMA has intervened in this action, and because it does extensive and continuous business in the State of New York.

13.     The Southern District of New York is the proper venue for this matter pursuant to 28 U.S.C. § 1391.

## THE PARTIES

14.     Plaintiff/Judgment Creditor LESLYE KNOX, who brings this action individually and as natural guardian of plaintiffs/judgment creditors Jordan Terrell

Ellis, Reuven Carter, Shanon Carter, Shayrah Carter, Yoshavyah Carter and Amitai Carter, holds a judgment against the PA and the PLO in the amount of $30,000,000.00.

15.     Plaintiff/Judgment Creditor LESLYE KNOX is a domiciliary and citizen of the State of Georgia.

16.     Plaintiffs/Judgment Creditors JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER, minors, who bring this action through their mother and legal guardian Leslye Knox, each hold a judgment against the PA and the PLO in the amount of $15,000,000.00.

17.     Plaintiffs/Judgment Creditors JORDAN TERRELL ELLIS, REUVEN CARTER, SHANON CARTER, SHAYRAH CARTER, YOSHAVYAH CARTER and AMITAI CARTER are domiciliaries and citizens of the State of Georgia.

18.     Plaintiff/Judgment Creditor TSAPHRIRAH ELLIS holds a judgment against the PA and the PLO in the amount of $7,500,000.00.

19.     Plaintiff/Judgment Creditor TSAPHRIRAH ELLIS is a domiciliary and citizen of the State of Illinois.

20.     Defendant/Garnishee BNY is a banking institution incorporated and headquartered in New York State.

21.     BNY's principal place of business is New York State.

22.     The PMA is a constituent department of the PA and carries out certain of the PA's governmental functions relating to regulation of banking.

## STATEMENT OF FACTS

### a.    Background

23.    Plaintiffs/Judgment Creditors are the widow, children and sister of Aharon Ellis, an American citizen who was murdered in a terrorist machine-gun attack carried out by the PA and PLO at a Bat Mitzvah celebration on January 17, 2002, in Hadera, Israel.

24.    Senior operatives and officials of the PA and PLO were convicted of the murder of Aharon Ellis by the courts of the State of Israel.

25.    The liability of the PA and PLO for the murder of Mr. Ellis cannot be and has never been contested.

26.    The instant Plaintiffs/Judgment Creditors (along with the estate, parents and other siblings of Aharon Ellis) filed suit in this Court in 2003 against the PA and PLO under the Antiterrorism Act ("ATA") 18 U.S.C. § 2331 *et seq. Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM).

27.    On July 11, 2006, this Court gave a Decision and Order directing entry of final judgment against the PA and PLO and in favor of all the plaintiffs, in the total amount of $192,740,660.13 in damages. *Knox v. Palestine Liberation Organization*, 442 F.Supp.2d 62 (S.D.N.Y. 2006). Final judgment was entered in accordance with that Decision and Order on August 1, 2006 (the "Judgment").

28.    The PA and PLO appealed the Judgment to the Court of Appeals for the Second Circuit but failed to file an appellate brief, and the appeal was therefore

dismissed. *See Knox et al. v. The Palestine Liberation Organization et al.*, No. 03 Civ. 4466(VM), dkt. #91.

29.    The PA and PLO have refused to satisfy the Judgment because, as they have brazenly informed this Court, they do not recognize the authority of the courts of the United States. On July 15, 2005, this Court ordered the PA and PLO to pay sanctions in the amount of some $19,000 previously imposed upon them by this Court in the underlying action, and to answer the complaint, by no later than August 15, 2005. In response to that order, the PLO and PA sent a letter to this Court on August 15, 2005, stating that:

> [T]he defendants have instructed counsel to present only their position that U.S. courts have no jurisdiction over them and not to answer on the merits . . .
>
> This same position, that the Court has no jurisdiction over them, applies to the order for defendants to pay sanctions.

Letter from Ramsey Clark, Esq. to Marrero, J., August 15, 2005, *Knox v. Palestine Liberation Organization*, No. 03 Civ. 4466(VM).

### b.    The Claims Against BNY

30.    BNY currently holds funds nominally titled to the Palestine Monetary Authority ("PMA") in the amount of approximately $20 million.

31.    Plaintiffs/Judgment Creditors seek turnover of those funds.

### 1.     The PMA Is a Mere Department and/or Division of Judgment Debtor PA

32.     The PA is a non-sovereign municipal governmental entity.

33.     Like many governmental entities, the PA is comprised of various constituent departments and divisions.

34.     These constituent departments and divisions of the PA are integral parts of the PA itself, and are legally indistinguishable from the PA itself.

35.     The PMA is one such constituent department and/or division of the PA.

36.     The PMA is an integral part of the PA itself.

37.     The PMA is legally indistinguishable from the PA itself.

38.     Because the PMA is legally indistinguishable from the PA itself, the funds titled to the PMA held by BNY are assets of the PA subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

39.     Because the PMA is legally indistinguishable from the PA, the Court need not find that the PMA is an alter ego of the PA, in order to render the funds titled to the PMA held by BNY subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

40.     Because the PMA is legally indistinguishable from the PA, the Court need not pierce PMA's corporate veil, in order to render the funds titled to the PMA held by BNY subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA. Indeed, there is no corporate veil separating the PA and the PMA that needs to be pierced.

## 2. Alternatively, the PMA Is an Alter-Ego of the PA and/or Any Separate Corporate Form Enjoyed by the PMA Should be Disregarded

41.     Alternatively, if the Court finds that the PMA has some corporate form distinguishable from that of the PA, that corporate form should be disregarded and/or the PMA should be found to be an alter ego of the PA.

42.     The PMA is undisputedly part of the PA's governmental apparatus and has no business of its own. The PMA's sole business is to perform the PA's governmental functions. Thus, the PMA is a mere proxy and organ, i.e. an *alter ego*, of the PA.

43.     Moreover, the PMA is extensively controlled and dominated by the PA, and so is a mere agent of the PA.

44.     According to the PA "Monetary Authority Law", which the PMA has represented to be the law governing its existence, the PA appoints and can remove all the directors of the PMA; the PA is ultimately answerable for the debts of the PMA; the PA is entitled to receive the profits of the PMA; the PA sets the policies of the PMA; the PA decreed the existence of the PMA and has sole power to terminate the existence of the PMA; and the PMA is the agent of the PA.

45.     The PA "Monetary Authority Law" also provides that the PMA holds "the international reserves" of the PA and defines the term "international reserves" as including gold or currency or any other assets, promissory notes, and government bonds, and other notes and negotiable securities.

46.     The PMA was capitalized by the PA without consideration.

47.     The PMA has also cited and identified the Oslo Accords (an agreement between Israel and the PLO, creating the PA) as the constituent instrument of the PMA.

48.     The Economic Protocol of the Oslo Accords provides that the PMA will exist to act as the PA's official economic and financial advisor and to act as the PA's "sole financial agent, locally and internationally".

49.     The Economic Protocol of the Oslo Accords also provides that the PMA is the sole depository and manager of the PA's foreign currency and gold reserves. The PA has no currency of its own, and <u>all</u> its currency reserves are foreign currency reserves. Thus, bluntly stated, the PMA is the PA's "piggy bank".

50.     The PMA itself recognizes no distinctions between the PMA and the PA; for example, PA letterhead is used in the ordinary course of business by the PMA.

51.     Furthermore, recognizing any separate existence claimed by the PMA would work a profound injustice, be contrary to public policy and defeat an important legislative purpose because it would prevent Plaintiffs/Judgment Creditors from enforcing their judgment and thereby (a) prevent Plaintiffs/Judgment Creditors from receiving the compensation awarded them for the terrorist murder of their decedent and (b) thwart Congress' purpose in enacting § 2333 of the ATA, which is to deter future terrorist attacks against American citizens. Moreover, since the PA is ultimately answerable for the debts of the PMA and entitled to the profits of the PMA, the paying party would thus in any case be the PA.

52.     Therefore, alternatively, if the PMA is found to have some corporate form distinguishable from that of the PA, that corporate form should be

disregarded and/or the PMA should be found to be an alter ego of the PA, and the funds titled to the PMA held by BNY should be turned over to Plaintiffs/Judgment Creditors in satisfaction of their judgment.

**3.    The Decision of the New York State Court Regarding These Funds Has Been Mooted and Was Erroneous**

53.    The funds at BNY were the subject of a decision of the New York Supreme Court in *Palestine Monetary Authority v. Strachman*, 2007 WL 1063867 (N.Y.Sup. 2007).

54.    In *Palestine Monetary Authority*, the court held that the question of whether the PMA is legally identical with the PA is non-justiciable, because in a license issued by the Office of Foreign Assets Control ("OFAC") of the Department of the Treasury, the PMA is referred to as an "independent agenc[y]" of the PA. *See Palestine Monetary Authority*, 2007 WL 1063867 at *2, 4-5.

55.    The OFAC license upon which the justiciability decision in *Palestine Monetary Authority* is based was superseded, and rendered nugatory and ineffective, by the issuance of OFAC General License No. 7 on June 20, 2007. Accordingly, no current, operative and effective OFAC license referring to the PMA as an "independent agenc[y]" of the PA is now in existence. Therefore, the factual basis for the justiciability analysis in *Palestine Monetary Authority* no longer exists, and that decision is not good law (assuming purely *arguendo* it ever was).

56.    Moreover, that decision is, respectfully, erroneous, for the reasons set forth below, *inter alia*:

57.    The question of whether a foreign governmental body is legally separate from its central government for purposes of enforcement of a judgment is the

exclusive prerogative of the Judiciary, not the Executive Branch. While the Executive Branch may file a statement of interest expressing its position (which it did <u>not</u> do in *Palestine Monetary Authority*), the position of the Executive is never dispositive, and the courts are not only free, but required, to adjudicate the status of the foreign entity using <u>legal</u> standards, irrespective of the position of the Executive.

58.     Furthermore, by referring to the PMA as an "independent agenc[y]" OFAC <u>did not even purport</u> to make any determination whatsoever about the legal status of the PMA. Rather, OFAC organized the license into groups, using the familiar categories of executive, judiciary, legislature, and the catch-all of category of "independent agencies". The purpose of the license is to name those parts of the PA government that are not controlled by Hamas personnel. The division into categories is completely incidental to the license, and in no way constitutes a "finding" or "determination". OFAC could just as easily have listed the entities alphabetically.

59.     Also, the OFAC license does not refer to the PMA as a <u>separate</u> legal entity, only as an "independent agenc[y]". The statement about "independence" is meaningless here, where the question is whether the PMA is a <u>separate</u> legal entity. The FBI is part and parcel of the Executive Branch, part of the legal entity known as the United States of America, yet it is an "independent agency", though it is not legally separate.

60.     Additionally, the interpretation of the OFAC license adopted in *Palestine Monetary Authority* is erroneous because it ignores clear statements by OFAC that the PMA is legally identical with the PA, as discussed in the next section.

**4.    Alternatively, the Executive Branch Has Determined That the PMA Is Legally Identical With the PA**

61.    Alternatively, if the Court finds that any determination by OFAC of the PMA's legal status is dispositive and/or renders the question of the PMA's status non-justiciable, then Plaintiffs/Judgment Creditors must prevail in this action because (contrary to holding in *Palestine Monetary Authority*) the fact is that OFAC has determined that the PA and PMA are legally identical, as explained below.

62.    The "Guidelines on Transactions with the Palestinian Authority" published by OFAC state that:

> OFAC sanctions against the Palestinian Authority affect **only transactions by U.S. persons with the Palestinian Authority**. Therefore, these sanctions generally <u>do not</u> prohibit U.S. persons from providing assistance to, or engaging in business dealings with, private individuals, corporations, or organizations in the West Bank or Gaza.

> <u>General Licenses</u>: On April 12, 2006, OFAC issued 6 general licenses, available on OFAC's website and published in the *Federal Register* (71 *Fed. Reg.* 27199, May 10, 2006), authorizing U.S. persons to engage in certain transactions **with the Palestinian Authority**.

Office of Foreign Assets Control publication, *Guidelines on Transactions with the Palestinian Authority*, issued on July 17, 2006, and published by OFAC at www.treas.gov/offices/enforcement/ofac/programs/terror/ns/pal_guide.pdf (emphasis by italics added).

63.    Thus, the OFAC license at issue "authorize[es] U.S. persons to engage in certain transactions <u>with the Palestinian Authority</u>" and that license is

necessary only because "OFAC sanctions against the Palestinian Authority affect only transactions by U.S. persons <u>with the Palestinian Authority</u>."

64.    Therefore, the PMA was included in the OFAC license precisely and only because OFAC has determined that transactions with the PMA constitute transactions with the Palestinian Authority.

65.    Furthermore, OFAC has explained that the license is a "'White List' of <u>parts of the Palestinian Authority</u> that U.S. persons can deal with" and that "Dealings with any <u>part of the Palestinian Authority</u> not listed in the General License require a specific license from OFAC." *See OFAC Guide to Dealing with the Palestinian Authority*, published by OFAC at www.treas.gov/offices/enforcement/ofac/programs/terror/pa.shtml (emphasis added).

66.    Thus, OFAC has determined that the PMA is a "part of the Palestinian Authority." *Id.*

67.    Accordingly, if the Court finds that OFAC's determination of the status of the PMA is dispositive and binding on this Court, then Plaintiffs/Judgment Creditors are entitled to turnover of the funds at issue on the basis of OFAC's determination that the PA and PMA are legally identical.

**b.    The Claims Against the PMA**

**1.    The PMA Is Legally Identical with Judgment Debtor PA**

68.    The PA is a non-sovereign municipal governmental entity.

69.    Like many governmental entities, the PA is comprised of various constituent departments and divisions.

70.     These constituent departments and divisions of the PA are integral parts of the PA itself, and are legally indistinguishable from the PA itself.

71.     The PMA is one such constituent department and/or division of the PA.

72.     The PMA is an integral part of the PA itself.

73.     The PMA is legally indistinguishable from the PA itself.

74.     Because the PMA is legally indistinguishable from the PA itself, the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA.

75.     Because the PMA is legally indistinguishable from the PA, the Court need not find that the PMA is an alter ego of the PA in order to determine that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA.

76.     Because the PMA is legally indistinguishable from the PA, the Court need not pierce PMA's corporate veil, in order to determine that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA. Indeed, there is no corporate veil separating the PA and the PMA that needs to be pierced.

## 2.     The PMA Holds Assets Subject to Turnover to the Plaintiffs/Judgment Creditors

77.     The PMA holds the reserve assets of the PA, which include the PA's gold, currency and other assets, promissory notes, bonds, and other notes and negotiable securities.

78.     The PMA is the sole depository and manager of the PA's foreign currency and gold reserves. The PA has no currency of its own, and all its currency reserves are foreign currency reserves. Thus, the PMA is the PA's "piggy bank".

79.     The PMA owes debts titled to the PA.

80.    Additionally, the PMA has in its possession and/or custody money and property which is titled in the name of the PMA itself.

81.    All the above-described assets and debts are subject to turnover to the Plaintiffs/Judgment Creditors in satisfaction of their judgment against the PA.

82.    Alternatively, if the Court finds that the PMA is legally distinguishable from the PA, then all the above-described assets and debts held and/or owed by the PMA, except those assets owned solely by the PMA itself, are subject to turnover to the Plaintiffs/Judgment Creditors in satisfaction of their judgment against the PA.

### 3.    Fraudulent Conveyance

83.    Article 12 of the PA's "Monetary Authority Law" provides that at the end of each year the PMA is required to transfer its annual net profits to the PA.

84.    Article 13 of the Monetary Authority Law provides that the PA may waive and relinquish its right to receive the PMA's annual profits.

85.    Upon information and belief, in late 2006 or early 2007 the PA waived and relinquished its right to receive the sum of the PMA's net annual profits for 2006, pursuant to Article 13 of the Monetary Authority Law.

86.    Section 270 of the New York Debtor and Creditor Law ("D.C.L.") defines the term conveyance as including "every payment of money, assignment, release [or] transfer … of tangible or intangible property…" (emphasis added).

87.    The PA's waiver and relinquishment of its right to receive the sum of the PMA's annual profits for 2006 pursuant to Article 13 of the Monetary Authority Law constituted a conveyance of that sum to the PMA within the meaning of D.C.L. 270.

-16-

88.     The PA's conveyance of the PMA's 2006 annual profits to the PMA was made without fair consideration, as that term is defined in § 272 of the D.C.L., because no property was conveyed or antecedent debt satisfied in exchange for the PMA's profits, as a fair equivalent therefor, nor were the PMA's profits received to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the PMA's profits.

89.     The PA's conveyance of the PMA's 2006 annual profits to the PMA was made without fair consideration, as that term is defined in D.C.L. § 272, for the further reason that those profits were neither conveyed by the PA nor received by the PMA in "good faith", within the meaning of D.C.L. § 272, since the PMA and PA (a) are (even if not legally identical) closely related entities (b) knew of the PA's judgment debt to the Plaintiffs/Judgment Creditors and its refusal to honor that judgment (c) by executing that conveyance, failed to deal honestly, fairly and openly (d) executed that conveyance without an honest belief in the propriety thereof (e) executed that conveyance with an intent to take unconscionable advantage of the Plaintiffs/Judgment Creditors, and (f) executed that conveyance with knowledge of the fact that the conveyance would hinder, delay, and/or defraud the Plaintiffs/Judgment Creditors, and with the intent of causing such hindrance, delay and fraud.

90.     At the time that the PA conveyed the sum of the PMA's 2006 annual profits to the PMA without fair consideration, a final judgment in an action for money damages in favor of the Plaintiffs/Judgment Creditors had been docketed in this Court against the PA, and the PA had (and still has) failed to satisfy that judgment, and that conveyance is therefore fraudulent as to the Plaintiffs/Judgment Creditors pursuant to D.C.L. § 273-a.

91. Additionally, the conveyance of the PMA's 2006 profits was made by the PMA and PA with the intent of hindering, delaying and defrauding the Plaintiffs/Judgment Creditors, and is therefore fraudulent as to the Plaintiffs/Judgment Creditors under D.C.L. § 276.

## FIRST CLAIM FOR RELIEF

## TURNOVER PURSUANT TO CPLR §§ 5225/5227

92. Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

93. Plaintiffs/Judgment Creditors are judgment-creditors of the PA.

94. Defendant/Garnishee BNY holds funds nominally titled to the PMA that are subject to turnover in satisfaction of Plaintiffs/Judgment Creditors' judgment against the PA.

95. Plaintiffs/Judgment Creditors are therefore entitled to an order and judgment pursuant to New York State Civil Practice Law and Rules §§ 5225 and 5227 directing Defendant/Garnishee BNY to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA, all funds held by BNY nominally titled to the PMA.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

96.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

97.    Plaintiffs/Judgment Creditors are judgment creditors of the PA.

98.    The PMA is legally identical with the PA.

99.    The PMA is therefore liable for Plaintiffs/Judgment Creditors' judgment against the PA.

100.    Plaintiffs/Judgment Creditors judgment may therefore be enforced against assets titled to the PMA.

101.    Entry of a judgment declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against assets titled to the PMA would substantially assist the Plaintiffs/Judgment Creditors to enforce their judgment, both within the context of this action and otherwise.

102.    Plaintiffs/Judgment Creditors are therefore entitled to a judgment declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against assets titled to the PMA.

## THIRD CLAIM FOR RELIEF

## TURNOVER PURSUANT TO CPLR § 5225(a)

103.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

104.    The PMA is legally indistinguishable from judgment debtor PA.

105.    The PMA is in possession and custody of money and personal property in which the PA and the PMA (which are legally indistinguishable) have an interest.

106.    Section 5225(a) of New York State Civil Practice Law and Rules ("CPLR") empowers this Court to order the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and the PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and PMA have an interest.

107.    Plaintiffs/Judgment Creditors are therefore entitled to an order and judgment pursuant to CPLR § 5225(a) directing the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and the PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and the PMA have an interest.

## FOURTH CLAIM FOR RELIEF

## TURNOVER PURSUANT TO CPLR §§ 5225(b) and 5227

108.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

109.    The PMA owes debts titled to the PA and is in possession and custody of money and other property titled to the owned by the PA.

110.    Sections 5225(b) and 5227 of the CPLR empower this Court to order the PMA (in the event that it is found to be legally distinguishable from the PA and therefore not subject to § 5225(a)[2]) to turnover and pay to the Plaintiffs/Judgment Creditors all debts owed by the PMA to the PA and all money owned by the PA in the possession or custody of the PMA and, if the sums owed and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA.

111.    Therefore, if the Court determines that the PMA and PA are not legally identical (and that the PMA is therefore not subject to § 5225(a)), Plaintiffs/Judgment Creditors are entitled to an order and judgment pursuant to CPLR §§ 5225(b) and 5227 directing the PMA to turnover and pay to Plaintiffs/Judgment

---

[2]    If the PMA is found to be identical with the PA then it is subject to § 5225(a), as set forth in the Third Claim for Relief, and the relief sought in this Fourth Claim for Relief would thus be available under § 5225(a). This Fourth Claim for Relief is therefore made in the alternative to the Third Claim for Relief.

Creditors, up to the full amount of their judgment against the PA, all debts owed by the PMA to the PA and all money owned by the PA in the possession or custody of the PMA and, if the sums owed and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA.

### FIFTH CLAIM FOR RELIEF

### FRAUDULENT CONVEYANCE

112.    Plaintiffs/Judgment Creditors repeat and reallege each of the foregoing allegations with the same force and effect as if they were fully set forth herein.

113.    The PA fraudulently conveyed the sum of its 2006 annual profits to the PMA.[3]

114.    Therefore, Plaintiffs/Judgment Creditors are entitled to a judgment and order against the PMA, pursuant to D.C.L. § 278, setting aside and annulling the conveyance to the PMA by the PA of the PMA's 2006 annual profits, directing the PMA to deliver the amount of those profits to the Plaintiffs/Judgment Creditors, and entering a money judgment against the PMA and in favor of the Plaintiffs/Judgment Creditors for the amount of those profits, up to the full amount of their judgment against the PA.

---

[3]     A legal entity cannot make a conveyance to itself. Therefore, this Fifth Claim for Relief is asserted in the alternative, in the event that the Court determines that the PA and PMA are not legally identical. If the PMA is found to be identical with the PA, then § 5225(a) would apply, as set forth in the Third Claim for Relief.

**WHEREFORE**, the Plaintiffs/Judgment Creditors demand an order and judgment:

(i)     Against Defendant/Garnishee BNY, ordering BNY to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA and the statutory interest thereon, all funds held by Defendant BNY titled to the PMA;

(ii)     Against Defendant/Intervenor PMA, declaring that the PMA is legally identical with the PA, that the PMA is liable for Plaintiffs/Judgment Creditors' judgment against the PA, and that Plaintiffs/Judgment Creditors' judgment may be enforced against any assets titled to the PMA;

(iii)     Against Defendant/Intervenor PMA, pursuant to § CPLR 5225(a), directing the PMA to pay to the Plaintiffs/Judgment Creditors the money in its possession in which the PA and PMA have an interest up to the full amount of Plaintiffs/Judgment Creditors' judgment against the PA and, if such money is insufficient to satisfy the judgment, to deliver to the sheriff the personal property in its possession in which the PA and PMA have an interest;

(iv)     Against Defendant/Intervenor PMA, pursuant to CPLR §§ 5225(b) and 5227, directing the PMA to turnover and pay to Plaintiffs/Judgment Creditors, up to the full amount of their judgment against the PA, all debts owed by the PMA to the PA and all money owned by the PA in the possession or custody of the PMA and, if the sums owed and the money are insufficient to satisfy the judgment, to deliver to the sheriff all other property owned by the PA in the possession or custody of the PMA;

(v)     Against Defendant/Intervenor PMA, pursuant to D.C.L. § 278, setting aside and annulling the conveyance to the PMA by the PA of the PMA's 2006 annual profits, directing the PMA to deliver the amount of those profits to the Plaintiffs/Judgment Creditors, and entering a money judgment against the PMA and in favor of the Plaintiffs/Judgment Creditors for the amount of those profits, up to the full amount of their judgment; and

(vi)    Against Defendant/Garnishee BNY and Defendant/Intervenor PMA, awarding Plaintiffs/Judgment Creditors their costs, expenses, disbursements and attorney's fees in connection with this proceeding, together with such other and further relief that this Court deems just, proper and equitable.

Dated: New York, New York
        July 7, 2007

                                Yours,

                                JAROSLAWICZ & JAROS, LLC
                                *Attorneys for the*
                                *Plaintiffs/Judgment Creditors*

                                by: _____
                                    Robert J. Tolchin

                                225 Broadway, 24th floor
                                New York, New York 10007
                                (212) 227-2780

                                David Strachman, Esq.
                                MCINTYRE, TATE & LYNCH, LLP
                                *Attorneys for the*
                                *Plaintiffs/Judgment Creditors*

321 South Main Street, Suite 400
Providence, Rhode Island 02903
(401) 351-7700